# EXHIBIT 1

Allianz Global Corporate & Specialty®

# Insurance policy

## Commercial Lines Policy





**Allianz Global Risks US Insurance Company**
2350 Empire Avenue, Burbank, CA 91504

**THIS POLICY CONSISTS OF:**
- **DECLARATIONS**
- **ONE OR MORE COVERAGE PARTS.**

**A COVERAGE PART CONSISTS OF:**
- **ONE OR MORE COVERAGE FORMS**
- **APPLICABLE FORMS AND ENDORSEMENTS**

**In Witness Whereof,** we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

*Julia A. Ham*

President and Chief Executive Officer

**AGR-DS 1003 (09-11)**

**Page 1 of 1**

# Allianz Global Risks US Insurance Company

(A Stock Company)
2350 Empire Avenue
Burbank, CA 91504-3350

## COMMON POLICY DECLARATIONS

Policy No.: **CLP3012948**

Policy Period: From: **December 08, 2011**
To: **December 08, 2012**

---

First Named Insured:
**Nomura Holdings America Inc., Instinet
Incorporated**
2 World Financial Center
New York, NY 10281
USA

Producer:
**Marsh USA Inc**

1166 Avenue of the Americas
New York, NY 10036
USA

---

| | | |
|---|---:|---:|
| Property Policy Premium | | $637,408.00 |
| Certified Terrorism | | $230,000.00 |
| State Surcharges | | $6,506.00 |
| FL Fire Surcharge | $1.00 | |
| FL EMPA Surcharge | $4.00 | |
| FL HCATF-06 | $1.00 | |
| FL Citizens EA-07 | $1.00 | |
| NJ PLIGA Surcharge | $3,558.00 | |
| NY Fire Fee | $2,938.00 | |
| TX Fire Assessment | $3.00 | |

---

**TOTAL AMOUNT PAYABLE BY THE INSURED**                    **$873,914.00**

# Allianz Global Risks US Insurance Company

## FORMS AND ENDORSEMENT LIST

**NAMED INSURED:**   Nomura Holdings America Inc., Instinet Incorporated
**POLICY NUMBER:**   CLP   3012948
**EFFECTIVE DATE:**   12/8/2011

The following policy forms and endorsements have been attached to and made a part of the policy at inception.

| FORM NAME | FORM NUMBER | EDITION DATE |
|---|---|---|
| Policyholder Notice - All States | AGR-IL 8001 (02-11) | 02/2011 |
| Policyholder Notice - OFAC | AGR-IL 8003 (01-05) | 01/2005 |
| Florida Assessment(s) Policyholder Disclosure Notice | AGR-CP 8FL2 (04-11) | 04/2011 |
| AZAPP Global Form | AZAPPG-CP 2000 (01-10) | 01/2010 |
| Appendix - Critical Non-US Earth Movement Areas Definition | AZAPPG-CP 2104 (05-10) | 05/2010 |
| Appendix - Critical Worldwide Named Windstorm Areas Definitions | AZAPPG-CP 2012 (05-09) | 05/2009 |
| Appendix - New Madrid Seismic Zone Definition | AZAPP-CP 2012 (11-07) | 11/2007 |
| Appendix - Pacific Northwest Seismic Zone Definition | AZAPP-CP 2013 (11-07) | 11/2007 |
| New York Changes - Cancellation and Nonrenewal Endorsement | AGR-CP NY01 (10-07) | 10/2007 |
| Media Broad Valuation Endorsement | AZAPP-CP 4012 (06-08) | 06/2008 |
| Policy Deductible Endorsement | AZAPP-CP 3106 (11-10) | 11/2010 |
| Schedule of Entities | AGR-IL M001 (11-03) | 11/2003 |
| Service Interruption - Audio, Data And Video Coverage Endorsement | AZAPP-CP 4009 (10-09) | 10/2009 |
| Terrorism Endorsement: Certified Act Of Terrorism | AZAPP-CP 5T11 (02-08) | 02/2008 |
| Transportation Time Element Coverage Endorsement | AZAPP-CP 4011 (10-09) | 10/2009 |

AGR-DS 1002 (11-03)



# POLICYHOLDER NOTICE - ALL STATES

Allianz Global Risks US Insurance Company
24 Hour Emergency Claims Service

**TO OBTAIN INFORMATION, FILE A CLAIM OR TO MAKE A COMPLAINT:**

You may call Allianz Global Risks US Insurance Company's toll free number at:

**Phone:** **(800) 211-6647**
**Fax:** **(818) 260-7239**

**Emergency Pager Number:** **(800) 418-2811**
**Online Claims Reporting:** **http://aic-allianz.com/claimsonline/property_report.htm**
**To report a claim via e-mail:** **propertyclaims@aic-allianz.com**

You may also write to:

Allianz Global Risks US Insurance Company
P.O. Box 7780
2350 Empire Avenue
Burbank, California 91510-7780

For additional copies of this notice or convenient business cards/contact cards, call:

**Phone:** (312) 224-3300
**E-mail:** propertyclaims@aic-allianz.com

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.



**Allianz** ⑪
Global Risks

# POLICYHOLDER NOTICE - OFAC

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- o   Foreign agents;
- o   Front organizations;
- o   Terrorists;
- o   Terrorist organizations; and
- o   Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**Allianz** 
Global Risks

## FLORIDA ASSESSMENT(S)
## POLICYHOLDER DISCLOSURE NOTICE

A. **2007 FLORIDA CITIZENS EMERGENCY ASSESSMENT  (FL Citizens EA-07)**

In January 2007, the Florida OIR issued an order approving the certification of an Emergency Assessment by Citizens for its HRA.

Citizens determined that the 2005 Plan Year deficit in the HRA exceeds the maximum amount recoverable via a Regular Assessment and therefore an Emergency Assessment was needed.

It concluded that the remaining deficit, after the collection of the Regular Assessment, which is to be funded through the Emergency Assessment is $887,502,331.  This amount is to be amortized over a period of ten (10) years and is based on an initial annual assessment 1.40% on the direct written premium of all subject lines of business.

The order requires us to collect **1.00%** of premiums we write in the following lines of business: fire and allied lines.  This premium surcharge is applicable to policies with inception dates **on or after July 1, 2011** and to any endorsements to such policies.

B. **2006 FLORIDA HURRICANE CATASTROPHE FUND ASSESSMENT (FL HCATF-06)**

Due to the unprecedented hurricane seasons of 2004 and 2005, the Florida Hurricane Catastrophe Fund (FCHF) has exhausted nearly all of the $6B in reserves it had accumulated since its inception in 1993. The Florida State Board of Administration (SBA), the body that oversees the FHCF, had directed the OIR to levy an Emergency Assessment upon all property and casualty business in the State of Florida, pursuant to Section 215.555(6)(b)1., Florida Statute, and Rule 19-8.013, Florida Administrative Code.

The assessment so ordered by the OIR is:

1. **1.3%** of premiums we write in the following lines of business: fire, allied lines, inland marine, earthquake, boiler and machinery, products liability and other liability; and

2. applies to property and casualty policies and endorsements with inception dates **on or after January 1, 2011.**



# ALLIANZ AMERICA PREFERRED PROPERTY FORM

# GLOBAL VERSION

# AZAPPG-CP 2000 (01-10)



## TABLE OF CONTENTS

| | | |
|---|---|---|
| **SECTION I.** | **DECLARATIONS** | 5 |
| A. | Company | 5 |
| B. | Policy No. | 5 |
| C. | Insured | 5 |
| D. | First Named Insured and Mailing Address | 5 |
| E. | Policy Period | 5 |
| F. | Premium | 5 |
| G. | Currency | 5 |
| H. | Notice of Cancellation | 5 |
| I. | Policy Territory | 6 |
| J. | Insured Location(s) | 6 |
| K. | Company's Limit Of Liability | 6 |
| L. | Program Limits Of Liability | 7 |
| M. | Time Limit | 11 |
| N. | Distance Limitation | 12 |
| O. | Waiting Period | 12 |
| P. | Policy Deductible | 12 |

| | | |
|---|---|---|
| **SECTION II.** | **PROPERTY DAMAGE** | 16 |
| A. | INSURING AGREEMENT | 16 |
| B. | INSURED PROPERTY | 16 |
| C. | EXCLUDED PROPERTY | 17 |
| D. | EXCLUSIONS | 18 |
| E. | PROPERTY DAMAGE COVERAGE EXTENSIONS | 23 |
| | 1.   EARTH MOVEMENT | 23 |
| | 2.   FLOOD | 23 |
| | 3.   NAMED WINDSTORM | 24 |
| | 4.   ACCOUNTS RECEIVABLE | 25 |
| | 5.   AUTOMATIC COVERAGE | 26 |
| | 6.   BOILER AND MACHINERY | 27 |
| | (1)   BOILER AND MACHINERY - AMMONIA CONTAMINATION | 29 |
| | (2)   BOILER AND MACHINERY - HAZARDOUS SUBSTANCES | 29 |
| | (3)   BOILER AND MACHINERY - SPOILAGE | 29 |
| | (4)   BOILER AND MACHINERY - WATER DAMAGE | 29 |
| | 7.   BRANDS AND LABELS | 30 |
| | 8.   COINSURANCE DEFICIENCY | 30 |
| | 9.   CONSEQUENTIAL REDUCTION IN VALUE | 30 |
| | 10.  CONTROL OF DAMAGED PROPERTY | 30 |
| | 11.  COURSE OF CONSTRUCTION | 30 |
| | 12.  CURRENCY DEVALUATION | 32 |
| | 13.  DEBRIS REMOVAL | 32 |
| | 14.  DECONTAMINATION COSTS | 32 |
| | 15.  DEFENSE COSTS | 33 |
| | 16.  DEMOLITION AND INCREASED COST OF CONSTRUCTION | 33 |
| | 17.  DIFFERENCE IN CONDITIONS | 34 |
| | 18.  ERRORS AND OMISSIONS | 35 |
| | 19.  EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS | 35 |
| | 20.  EXPEDITING EXPENSES | 36 |
| | 21.  FINE ARTS | 36 |
| | 22.  FIRE DEPARTMENT SERVICE CHARGES | 37 |
| | 23.  LAND AND WATER CONTAMINANTS CLEANUP, REMOVAL AND DISPOSAL | 37 |
| | 24.  MISCELLANEOUS UNNAMED LOCATIONS | 37 |
| | 25.  NEIGHBOR'S RECOURSE AND TENANT'S LIABILITY | 38 |



| | 26. | NON-ADMITTED INCREASED TAX LIABILITY | 38 |
|---|---|---|---|
| | 27. | PROFESSIONAL FEES | 39 |
| | 28. | PROTECTION AND PRESERVATION OF PROPERTY - PROPERTY DAMAGE | 40 |
| | 29. | RADIOACTIVE CONTAMINATION | 40 |
| | 30. | SERVICE INTERRUPTION PROPERTY DAMAGE | 40 |
| | 31. | TAX TREATMENT OF PROFITS | 41 |
| | 32. | TEMPORARY REMOVAL OF PROPERTY | 41 |
| | 33. | TRANSPORTATION | 41 |
| | 34. | VACANCY | 43 |
| | 35. | VALUABLE PAPERS AND RECORDS | 43 |

**SECTION III.**    **TIME ELEMENT**   44

| | A. | LOSS INSURED | 44 |
|---|---|---|---|
| | B. | TIME ELEMENT COVERAGES | 44 |
| | | 1. COMMISSIONS, PROFITS AND ROYALTIES | 44 |
| | | 2. EXTRA EXPENSE | 45 |
| | | 3. GROSS EARNINGS | 45 |
| | | 4. GROSS PROFITS | 46 |
| | | 5. LEASEHOLD INTEREST | 48 |
| | | 6. RENTAL INSURANCE | 49 |
| | C. | TIME ELEMENT EXCLUSIONS | 49 |
| | D. | TIME ELEMENT COVERAGE EXTENSIONS | 50 |
| | | 1. CONTINGENT TIME ELEMENT | 50 |
| | | 2. EXTENDED PERIOD OF LIABILITY | 50 |
| | | 3. IMPOUNDED WATER | 50 |
| | | 4. INGRESS/EGRESS | 51 |
| | | 5. ORDER OF CIVIL OR MILITARY AUTHORITY | 51 |
| | | 6. PROTECTION AND PRESERVATION OF PROPERTY - TIME ELEMENT | 52 |
| | | 7. RELATED REPORTED VALUES | 52 |
| | | 8. RESEARCH AND DEVELOPMENT | 52 |
| | | 9. SERVICE INTERRUPTION TIME ELEMENT | 53 |
| | | 10. SOFT COSTS | 54 |
| | E. | PERIOD OF LIABILITY | 54 |
| | F. | TIME ELEMENT INTERDEPENDENCY | 56 |

**SECTION IV.**    **PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS**   56

| | A. | FRANCE AND THE FRENCH TERRITORIES | 56 |
|---|---|---|---|
| | B. | GERMANY | 56 |
| | C. | GREAT BRITAIN | 57 |
| | D. | NAMIBIA AND SOUTH AFRICA | 57 |
| | E. | NORTHERN IRELAND | 57 |
| | F. | NORWAY | 58 |
| | G. | SPAIN | 58 |
| | H. | UNITED STATES AND ITS TERRITORIES AND POSSESSIONS | 58 |

**SECTION V.**    **LOSS ADJUSTMENT AND SETTLEMENT**   58

| | A. | CURRENCY FOR LOSS PAYMENT | 58 |
|---|---|---|---|
| | B. | LOSS ADJUSTMENT AND LOSS PAYABLE | 59 |
| | C. | LOSS CONDITIONS | 59 |
| | | 1. ABANDONMENT | 59 |
| | | 2. APPRAISAL | 59 |
| | | 3. ASSIGNMENT OF POLICY | 60 |
| | | 4. COLLECTION FROM OTHERS | 60 |
| | | 5. COMPANY OPTION | 60 |
| | | 6. JURISDICTION | 60 |



|  | 7. | PARTIAL PAYMENT OF LOSS SETTLEMENT | 60 |
|  | 8. | REQUIREMENTS IN CASE OF LOSS | 60 |
|  | 9. | SALVAGE AND RECOVERY | 61 |
|  | 10. | SETTLEMENT OF CLAIMS | 61 |
|  | 11. | SUBROGATION | 62 |
|  | 12. | SUIT AGAINST THE COMPANY | 62 |
| D. | | VALUATION | 62 |
| | | | |
| **SECTION VI.** | **GENERAL CONDITIONS** | | **66** |
| A. | | ADDITIONAL INSURABLE INTERESTS | 66 |
| B. | | INCEPTION AND EXPIRATION TIME | 66 |
| C. | | INSPECTIONS | 67 |
| D. | | LIBERALIZATION | 67 |
| E. | | MISREPRESENTATION AND FRAUD | 67 |
| F. | | OTHER INSURANCE | 67 |
| G. | | POLICY MODIFICATION | 68 |
| H. | | REDUCTION BY LOSS | 68 |
| I. | | TITLES OF PARAGRAPHS | 68 |
| | | | |
| **SECTION VII.** | **DEFINITIONS** | | **69** |
| A. | | "Actual Cash Value" | 69 |
| B. | | "Contaminants" | 69 |
| C. | | "Electronic Data" | 69 |
| D. | | "Local Underlyer", "Local Underlyers", "Coordinated Local Policy", "Coordinated Local Policies", "Declared Local Policy" and "Declared Local Policies" | 69 |
| E. | | "Location" and "Locations" | 70 |
| F. | | "Media" | 70 |
| G. | | "Money" | 70 |
| H. | | "Occurrence" | 70 |
| I. | | "Ordinary Payroll" | 70 |
| J. | | "Policy" | 71 |
| K. | | "Precious Metals" | 71 |
| L. | | "Securities" | 71 |


**Allianz** (Ⓘ)
**Global Risks**

---

## SECTION I.     DECLARATIONS

---

A.     **Company**

**Allianz Global Risks US Insurance Company**
2350 Empire Avenue
Burbank, CA 91504-3350

B.     **Policy No.**

**CLP 3012948**

C.     **Insured**

**Nomura Holdings America Inc., Instinet Incorporated**

Instinet Incorporated and any subsidiary, associated, or allied company, corporation, firm, organization, limited liability companies, legally recognized entities and the Insureds interest in partnerships and/or joint ventures and/or any owned (wholly or partially) or controlled company (ies) where the Insured maintains an interest, all for which the Insured has management control or ownership as now or hereafter constituted or acquired, as their respective interest may appear; and any other party in interest that is required by contract or other agreement to be named, as their respective interest may appear..

D.     **First Named Insured and Mailing Address**

**Nomura Holdings America Inc., Instinet Incorporated**
2 World Financial Center
New York, NY 10281
USA

E.     **Policy Period**

From:     December 08, 2011  (Policy Inception Date)
To:        December 08, 2012  (Policy Expiration Date)

subject to INCEPTION AND EXPIRATION TIME.

F.     **Premium**

This "policy" is issued in consideration of the premium specified in the Common Policy Declarations.  The First Named Insured is responsible for the payment of such premium and any associated surcharges.  Any return of the paid premium accruing under this "policy" will be paid to the account of the First Named Insured.

G.     **Currency**

All amounts, including the Program Limits Of Liability, the Policy Deductible and the premium indicated in this "policy" are in the currency of the United States.  Losses will be adjusted and paid as provided under CURRENCY FOR LOSS PAYMENT.

H.     **Notice of Cancellation**

This "policy" may be canceled:

1.     at any time at the request of the First Named Insured:

    a.     by surrendering this "policy" to the Company; or

---

**AZAPPG-CP 2000 (01-10)**                                                                 **Page 5 of 71**


**Allianz**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

b.    by giving written notice to the Company stating when thereafter such cancellation will be effective; or

2.    by the Company by giving the First Named Insured written notice at least:

a.    **ten (10) consecutive calendar days** before the effective date of cancellation in the event the Company does not receive the premium by the date payment thereof becomes due; or

b.    **ninety (90) consecutive calendar days** before the effective date of cancellation for any other reasons.

If notice is mailed, then proof of mailing is sufficient proof of notice.

If the First Named Insured cancels this "policy", then any unearned premium will be calculated based on the customary short rate table. However, if the Company cancels this "policy", any unearned premium will be calculated on pro-rata basis. Any unearned premium due the Insured will be returned by the Company as soon as practicable.

I.    **Policy Territory**

Anywhere in the world excluding Afghanistan, Albania, Angola, Armenia, Azerbaijan, Cambodia, Cuba, Haiti, Iran, Iraq, Laos, Lebanon, Libya, Myanmar, North Korea, Rwanda, Somalia, Sudan, Syria, and any country where the United States Government prohibits companies or individuals from doing business or providing insurance. If such prohibition occurs during the Policy Period, then all coverages provided by this policy for locations in that country will cease to apply at the time and date that such prohibition takes effect as determined by the United States Government.

J.    **Insured Location(s)**

Insured Location(s) means any "location":

1.    listed on the latest schedule submitted to and accepted by the Company as of the Policy Inception Date;

2.    covered under AUTOMATIC COVERAGE;

3.    covered under ERRORS AND OMISSIONS; or

4.    covered under MISCELLANEOUS UNNAMED LOCATIONS.

Insured Location(s) includes the area within one thousand (1,000) feet of such "location", all within the Policy Territory.

K.    **Company's Limit Of Liability**

The Company is not liable for more than its proportionate share, as specified below, of the Program Limit or of the Program Layer Limits that make up the Program Limit for all loss or damage arising out of one "occurrence" regardless of the number of "locations" or coverages involved in the "occurrence":

| Company's Limit Of Liability | | Program Limit or Program Layer Limits | |
| --- | --- | --- | --- |
| $325,000,000 | (being 100%) part of | $325,000,000 | excess of Policy Deductible |

The Company is not liable for more than the same proportionate share specified above of any Program Sublimit(s) which are part of the Program Limit or are part of any Program Layer Limits that make up the Program Limit.


**Allianz** **Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

In the event an "occurrence" results in liability being payable under more than one policy issued to the Insured by the Company, or its subsidiaries, affiliates, or cooperation partners, the maximum amount payable in the aggregate under all such policies will be the Company's Limit Of Liability specified herein regardless of the number of "locations" or coverages involved.

L.    **Program Limits Of Liability**

1.    **Program Limit**

**$325,000,000 per "occurrence".**

2.    **Program Sublimit(s)**

a.    Program Sublimit(s) are part of and not in addition to the Program Limit.  Program Sublimit(s) do not increase the Program Limit or any other Program Sublimit(s).

b.    Program Sublimit(s) apply in the aggregate per "occurrence" to all "locations" and for all coverages involved, including TIME ELEMENT.

c.    When a Program Sublimit(s) is noted as a Term Aggregate, such Program Sublimit(s) applies in the aggregate to all losses occurring during the Policy Period.

d.    If more than one Program Sublimit(s) is involved in an "occurrence", the Program Sublimit(s) specified for the peril involved is the maximum Program Sublimit(s) applicable to such "occurrence".

e.    If a Program Sublimit(s) is specified for a "location" or property, such Program Sublimit(s) is the maximum amount payable under this "policy" for all loss or damage, including TIME ELEMENT loss, at all "locations" resulting from physical loss or damage not otherwise excluded by this "policy" at such "location" or to such property.

f.    No Program Sublimit(s) applies if the corresponding Program Sublimit(s) is specified as **Included**.  No coverage is provided by this "policy" if the corresponding Program Sublimit(s) is specified as **Not Insured**.

| Program Sublimit(s) | Coverage, Coverage Extension, Additional Coverage, "Location", Property or Peril |
|---|---|
| Included | Real Property |
| Included | Personal Property |
| $100,000,000 | EARTH MOVEMENT (Term Aggregate) sublimited as follows: |
| Not Insured | EARTH MOVEMENT at "locations" in the States of Alaska, and Hawaii (Combined Sublimit) |
| $25,000,000 | EARTH MOVEMENT at "locations" in the "New Madrid Seismic Zone" (Term Aggregate) |
| $15,000,000 | EARTH MOVEMENT for "locations" in the "Pacific Northwest Seismic Zone" (Term Aggregate) |
| $1,500,000 | EARTH MOVEMENT at "locations" in California (Term Aggregate) |
| $10,000,000 | EARTH MOVEMENT at "locations" in "Critical Non-US Earth Movement Areas" (Term Aggregate) |


**Allianz**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

| Program Sublimit(s) | Coverage, Coverage Extension, Additional Coverage, "Location", Property or Peril |
|---|---|
| $10,000,000 | EARTH MOVEMENT as respects AUTOMATIC COVERAGE; ERRORS AND OMISSIONS; EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS; and MISCELLANEOUS UNNAMED LOCATIONS (Combined Sublimit); excluding coverage in Japan, California and "Critical Non-US Earth Movement Areas" (Term Aggregate) |
| $100,000,000 | FLOOD (Term Aggregate) sublimited as follows: |
| $15,000,000 | FLOOD as respects "High Hazard Zones For  Flood" (Term Aggregate) |
| $25,000,000 | FLOOD as respects "Moderate Hazard Zones For Flood" (Term Aggregate) |
| Not Insured | FLOOD at "locations" in The Netherlands (Term Aggregate) |
| $5,000,000 | FLOOD as respects "High Hazard Zones For  Flood" for AUTOMATIC COVERAGE; ERRORS AND OMISSIONS; EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS; and MISCELLANEOUS UNNAMED LOCATIONS (Combined Sublimit) (Term Aggregate) |
| $10,000,000 | FLOOD as respects AUTOMATIC COVERAGE; ERRORS AND OMISSIONS; EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS; and MISCELLANEOUS UNNAMED LOCATIONS (Combined Sublimit) (Term Aggregate) |
| Included | NAMED WINDSTORM sublimited as follows: |
| $10,000,000 | NAMED WINDSTORM as respects AUTOMATIC COVERAGE; ERRORS AND OMISSIONS; EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS; and MISCELLANEOUS UNNAMED LOCATIONS (Combined Sublimit) |
| $25,000,000 | ACCOUNTS RECEIVABLE |
| $50,000,000 | AUTOMATIC COVERAGE |
| Included | BOILER AND MACHINERY sublimited as follows: |
| $5,000,000 | BOILER AND MACHINERY - AMMONIA CONTAMINATION |
| $5,000,000 | BOILER AND MACHINERY - HAZARDOUS SUBSTANCES |
| $5,000,000 | BOILER AND MACHINERY - SPOILAGE |


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

| Program Sublimit(s) | Coverage, Coverage Extension, Additional Coverage, "Location", Property or Peril |
|---|---|
| $5,000,000 | BOILER AND MACHINERY - WATER DAMAGE |
| $5,000,000 | BOILER AND MACHINERY as respects EXPEDITING EXPENSES |
| $50,000,000 | BOILER AND MACHINERY as respects EXTRA EXPENSE |
| Included | BRANDS AND LABELS |
| $15,000,000 | COINSURANCE DEFICIENCY |
| Included | CONSEQUENTIAL REDUCTION IN VALUE |
| Included | CONTROL OF DAMAGED PROPERTY |
| $10,000,000 | COURSE OF CONSTRUCTION |
| $10,000,000 | COC TESTING (This sublimit is part of and not in addition to the sublimit for COURSE OF CONSTRUCTION.) |
| $10,000,000 | COC TIME ELEMENT (This sublimit is part of and not in addition to the sublimit for COURSE OF CONSTRUCTION.) |
| $10,000,000 | SOFT COSTS (This sublimit is part of and not in addition to the sublimit for COURSE OF CONSTRUCTION.) |
| Not Insured | COURSE OF CONSTRUCTION Advance Loss of Profits |
| $15,000,000 | CURRENCY DEVALUATION |
| $50,000,000 | DEBRIS REMOVAL (or 25% of the adjusted property damage loss, maximum) |
| $1,000,000 | DECONTAMINATION COSTS (Term Aggregate) |
| Included | DEFENSE COSTS |
| $50,000,000 | DEMOLITION AND INCREASED COST OF CONSTRUCTION |
| Included | DIFFERENCE IN CONDITIONS for "locations" in Australia, Canada, France, Japan, Hong Kong, Singapore, Switzerland and United Kingdom |
| Included | Electronic Media Valuation a. cost of blank MEDIA b. the cost of copying electronic data from back-ups or from originals of a previous generation; |


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

| Program Sublimit(s) | Coverage, Coverage Extension, Additional Coverage, "Location", Property or Peril |
|---|---|
| | c. all other reasonable and necessary costs, not to exceed $10,000,000 any one loss, incurred by the INSURED in recreating, gathering and assembling such ELECTRONIC DATA |
| $10,000,000 | ERRORS AND OMISSIONS |
| $25,000,000 | EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS |
| $10,000,000 | EXPEDITING EXPENSES |
| $10,000,000 | FINE ARTS |
| $5,000,000 | FIRE DEPARTMENT SERVICE CHARGES |
| $250,000 | LAND AND WATER CONTAMINANTS CLEANUP, REMOVAL AND DISPOSAL (Term Aggregate) |
| $15,000,000 | MISCELLANEOUS UNNAMED LOCATIONS |
| $10,000,000 | NEIGHBOR'S RECOURSE AND TENANT'S LIABILITY |
| $10,000,000 | NON-ADMITTED INCREASED TAX LIABILITY |
| $250,000 | PROFESSIONAL FEES |
| Included | PROTECTION AND PRESERVATION OF PROPERTY - PROPERTY DAMAGE and PROTECTION AND PRESERVATION OF PROPERTY - TIME ELEMENT (Combined Sublimit) |
| Not Insured | RADIOACTIVE CONTAMINATION |
| $25,000,000 | SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT (Combined Sublimit), except |
| $10,000,000 | SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT as respects to Data, Voice, Video |
| $10,000,000 | TAX TREATMENT OF PROFITS |
| Included | TEMPORARY REMOVAL OF PROPERTY |
| $5,000,000 | TRANSPORTATION except |
| $1,000,000 | TRANSPORTATION as respects TIME ELEMENT |
| Included | VACANCY |
| $15,000,000 | VALUABLE PAPERS AND RECORDS |



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

| Program Sublimit(s) | Coverage, Coverage Extension, Additional Coverage, "Location", Property or Peril |
|---|---|
| $25,000,000 | COMMISSIONS, PROFITS AND ROYALTIES |
| $50,000,000 | EXTRA EXPENSE<br>for Nomura Holdings America Inc, Instinet Incorporated "locations" |
| Not Insured | GROSS EARNINGS |
| Not Insured | GROSS PROFITS |
| $25,000,000 | LEASEHOLD INTEREST |
| $15,000,000 | CONTINGENT TIME ELEMENT |
| $25,000,000 | RENTAL INSURANCE<br>subject to twelve months rental income being reported on SOV on file with the insurer |
| $25,000,000 | EXTENDED PERIOD OF LIABILITY - RENTAL INSURANCE as respects Instinet "locations"<br>(This sublimit is part of and not in addition to the sublimit for RENTAL INSURANCE.) |
| Not Insured | EXTENDED PERIOD OF LIABILITY - GROSS EARNINGS<br>(This sublimit is part of and not in addition to the sublimit for GROSS EARNINGS.) |
| Included | IMPOUNDED WATER |
| Included | EXTENDED PERIOD OF LIABILITY - IMPOUNDED WATER<br>(This sublimit is part of and not in addition to the sublimit for IMPOUNDED WATER.) |
| $25,000,000 | INGRESS/EGRESS |
| $25,000,000 | Civil and Military Authority |
| Not Insured | "Ordinary Payroll" |
| Included | RELATED REPORTED VALUES |
| $50,000,000 | RESEARCH AND DEVELOPMENT |
| Included | TIME ELEMENT INTERDEPENDENCY |

M.    **Time Limit**

No coverage is provided by this "policy" beyond the corresponding Time Limit specified:

AUTOMATIC COVERAGE
- 90 consecutive calendar days


**Allianz** ⑪
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

LEASEHOLD INTEREST
- 365 consecutive calendar days

EXTENDED PERIOD OF LIABILITY - RENTAL INSURANCE as respects Instinet "locations"
- 90 consecutive calendar days

EXTENDED PERIOD OF LIABILITY - GROSS EARNINGS
- 0 consecutive calendar days

EXTENDED PERIOD OF LIABILITY - IMPOUNDED WATER
- 30 consecutive calendar days

INGRESS/EGRESS
- 30 consecutive calendar days

Civil and Military Authority
- 30 consecutive calendar days

N.   **Distance Limitation**

INGRESS/EGRESS
- 5 statute miles

Civil and Military Authority
- 5 statute miles

O.   **Waiting Period**

Coverage is provided by this "policy" only if the corresponding Waiting Period specified is exceeded by the period of interruption of the Insured's business. If the Waiting Period is exceeded, then the corresponding coverage will apply in excess of the Policy Deductible.

BOILER AND MACHINERY -TIME ELEMENT
- 24 Hours, subject to a combined minimum of $250,000

-INGRESS/EGRESS
- 24 Hours in USA
  48 Hours outside of USA

-ORDER OF CIVIL OR MILITARY AUTHORITY
- 24 Hours in USA
  48 Hours outside of USA

- SERVICE INTERRUPTION
- 24 Hours in USA
  48 Hours outside of USA

P.   **Policy Deductible**

In each case of loss covered by this "policy", the Company is liable only if the Insured sustains a loss in a single "occurrence" greater than the applicable deductible specified, and only for its share of the excess:



**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

| | |
|---|---|
| **EARTH MOVEMENT at "locations" in the State of California:** | 5% applies separately to (A) and (B) below: |
| | (A) of the value, per VALUATION, of the Insured Property (including foundations) at the "location" where the physical loss or damage occurred. This PROPERTY DAMAGE deductible applies separately at each "location" irrespective of any other deductibles applying. |
| | (B) of the full 12 months TIME ELEMENT values that would have been earned in the 12-month period following the "occurrence" by use of the facilities at the "location" where the physical loss or damage occurred and of the full 12 months TIME ELEMENT values at all other "locations" where the TIME ELEMENT loss ensues. This TIME ELEMENT deductible applies separately at each "location" irrespective of any other deductibles applying. |
| | The combined deductible for PROPERTY DAMAGE and TIME ELEMENT is subject to a minimum of $250,000 per "occurrence". |
| **EARTH MOVEMENT at "locations" in the "New Madrid Seismic Zone" and the "Pacific Northwest Seismic Zone":** | $250,000 combined all coverages |
| **EARTH MOVEMENT at "locations" in "Crtical Non-US EARTH MOVEMENT Areas":** | 5% applies separately to (A) and (B) below: |
| | (A) of the value, per VALUATION, of the Insured Property (including foundations) at the "location" where the physical loss or damage occurred. This PROPERTY DAMAGE deductible applies separately at each "location" irrespective of any other deductibles applying. |
| | (B) of the full 12 months TIME ELEMENT values that would have been earned in the 12-month period following the "occurrence" by use of the facilities at the "location" where the physical loss or damage occurred and of the full 12 months TIME ELEMENT values at all other "locations" where the TIME ELEMENT loss ensues. This TIME ELEMENT deductible applies separately at each "location" irrespective of any other deductibles applying. |
| | The combined deductible for PROPERTY DAMAGE and TIME ELEMENT is subject to a minimum of $250,000 per "occurrence". |
| **EARTH MOVEMENT at all other "locations":** | $250,000 combined all coverages per "occurrence". |
| **FLOOD as respects "High Hazard Zones For Flood":** | 3% applies separately to (A) and (B) below: |
| | (A) of the value, per VALUATION, of the Insured Property (including foundations) at the "location" where the physical loss or damage occurred. This PROPERTY DAMAGE deductible applies separately at each "location" irrespective of any other deductibles applying. |
| | (B) of the full 12 months TIME ELEMENT values that would have been earned in the 12-month period following the "occurrence" by use of the facilities at the "location" where the physical loss or damage occurred and of the full 12 |


**Allianz** ⑩
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

months TIME ELEMENT values at all other "locations" where the TIME ELEMENT loss ensues.  This TIME ELEMENT deductible applies separately at each "location" irrespective of any other deductibles applying.

The combined deductible for PROPERTY DAMAGE and TIME ELEMENT is subject to a minimum of $1,000,000 per "occurrence".

**FLOOD at all other "locations":**  $250,000 per "occurrence".

**NAMED WINDSTORM for "locations" in Bermuda:**  2% applies separately to (A) and (B) below:

(A)  of the value, per VALUATION, of the Insured Property (including foundations) at the "location" where the physical loss or damage occurred. This PROPERTY DAMAGE deductible applies separately at each "location" irrespective of any other deductibles applying.

(B)  of the full 12 months TIME ELEMENT values that would have been earned in the 12-month period following the "occurrence" by use of the facilities at the "location" where the physical loss or damage occurred and of the full 12 months TIME ELEMENT values at all other "locations" where the TIME ELEMENT loss ensues.  This TIME ELEMENT deductible applies separately at each "location" irrespective of any other deductibles applying.

The combined deductible for PROPERTY DAMAGE and TIME ELEMENT is subject to a minimum of $1,000,000 per "occurrence".

**NAMED WINDSTORM The following deductibles apply to all other "locations":**  2% applies separately to (A) and (B) below:

(A)  of the value, per VALUATION, of the Insured Property (including foundations) at the "location" where the physical loss or damage occurred. This PROPERTY DAMAGE deductible applies separately at each "location" irrespective of any other deductibles applying.

(B)  of the full 12 months TIME ELEMENT values that would have been earned in the 12-month period following the "occurrence" by use of the facilities at the "location" where the physical loss or damage occurred and of the full 12 months TIME ELEMENT values at all other "locations" where the TIME ELEMENT loss ensues.  This TIME ELEMENT deductible applies separately at each "location" irrespective of any other deductibles applying.

The combined deductible for PROPERTY DAMAGE and TIME ELEMENT is subject to a minimum of $250,000 per "occurrence".

**TRANSPORTATION:**  $10,000 per "occurrence"

**BOILER AND MACHINERY - PROPERTY DAMAGE:**  $250,000 per "accident"

**All Other Losses (AOL): except as respects the following:**  $250,000 combined all coverages per "occurrence".

AZAPPG-CP 2000 (01-10)



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

| | |
|---|---|
| **For "locations" with a total insured value less than $250,000 and all international "locations"; however, EARTH MOVEMENT, FLOOD and NAMED WINDSTORM deductibles apply regardless of "location" or total insured value:** | $25,000 combined all coverages per "occurrence". |

Unless otherwise specified above:

1.  All deductibles apply on a per "occurrence" basis.

2.  When this "policy" covers more than one Insured Location(s), the deductible applies against the total loss covered by this "policy" in any one "occurrence".

3.  If two or more deductibles provided in this "policy" apply to a single "occurrence", then the total to be deducted will not exceed the largest deductible applicable.

4.  If a deductible is expressed as a period of time which is:

    a.  not otherwise more specifically stated; or

    b.  not intended to be converted to its monetary equivalents;

    then the Company will not be liable for the amount of loss sustained by the Insured during such period of time that immediately follows the physical loss or damage.

5.  If a deductible is expressed as an Average Daily Value (ADV) or a multiple thereof, the ADV will be calculated as follows:

    a.  Determine the "gross earnings" (if GROSS EARNINGS applies) or "gross profits" (if GROSS PROFITS applies) that would have been earned during the period of interruption of the Insured's business had no loss occurred.

    b.  Divide the result in a. above by the number of working days in the period of interruption of the Insured's business had no loss occurred. The resulting amount is the ADV.

    No reduction will be made for the "gross earnings" or "gross profits" not being earned or in the number of working days because of the loss, or because of any scheduled or unscheduled shutdowns during the period of interruption of the Insured's business.

    The ADV will be calculated based on the "gross earnings" or "gross profits" of the entire "location", whether or not the loss affects the entire "location". If direct physical loss or damage not otherwise excluded by this "policy" results in a TIME ELEMENT loss at more than one "location", the ADV will be calculated based on the combined "gross earnings" or "gross profits" of all affected "locations". For the purpose of this calculation, the period of interruption may not exceed the applicable PERIOD of LIABILITY.

6.  The deductible provisions specified above for NAMED WINDSTORM apply to all loss or damage, caused by or arising out of a "named windstorm", including, but not limited to, the following:

    a.  the force or action of wind caused by or resulting from a "named windstorm";

    b.  any material, object or debris that is carried, propelled or in any manner moved by a "named windstorm";


**Allianz** (Ⅲ)
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

  c.  any tornadoes that are a result of actions or effects of a "named windstorm";

  d.  hail that is a result of actions or effects of a "named windstorm";

  e.  lightning that is a result of actions or effects of a "named windstorm";

  f.  rain or water, whether the rain or water is driven by wind or not, that enters the covered building or structure through an opening created by the force of wind or water from a "named windstorm"; or

  g.  "flood", if covered by this "policy", that results from the actions or effects of "named windstorm".

---

## SECTION II.  PROPERTY DAMAGE

---

**A.**  **INSURING AGREEMENT**

  1.  Subject to the terms, conditions, exclusions and limitations contained herein or endorsed hereon and in consideration of the premium paid, this "policy" covers all risks of direct physical loss or damage to Insured Property at Insured Location(s), provided such physical loss or damage occurs during the Policy Period.

  2.  Coverage under this "policy" ends when at least one of the following occurs:

    a.  cancellation of this "policy" by the First Named Insured or by the Company;

    b.  the replacement policy takes effect; or

    c.  the Policy Expiration Date.

**B.**  **INSURED PROPERTY**

  Except as excluded hereinafter, Insured Property consists of property described below:

  1.  Real property in which the Insured has an insurable interest.

  2.  Personal property:

    a.  owned by the Insured, including the Insured's interest as a tenant in improvements and betterments.

      In the event of physical loss or damage not otherwise excluded by this "policy" to such improvements and betterments, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

    b.  of officers and employees of the Insured.

    c.  of others in the Insured's custody:

      (1)  to the extent the Insured is under obligation to keep such property covered for physical loss or damage not otherwise excluded by this "policy"; or

      (2)  to the extent of the Insured's legal liability for physical loss or damage not otherwise excluded by this "policy" to such property.


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

C.    **EXCLUDED PROPERTY**

Insured Property does not include and this "policy" does not cover loss or damage to the following:

1.    bills, notes, "money", "securities".

2.    "precious metals", precious stones, semi-precious stones, jewelry, furs.

3.    land or land values.  However, this exclusion does not apply to the cost of reclaiming, restoring or repairing land improvements consisting of any alteration to the natural condition of the land by grading, landscaping, as well as additions to land such as pavements, roadways or similar works, but limited to the actual improvement, not the underlying land itself, at Insured Location(s).

4.    water or any other substance in or on land, except water that is contained within any enclosed tank, piping system or any other processing equipment.

5.    animals.

6.    growing, standing and drying crops or timber.

7.    watercraft or aircraft, except when unfueled and manufactured by the Insured.

8.    waterborne equipment or offshore property, including any offshore drilling and production rigs.

9.    spacecraft, satellites, including their launch vehicles and launch sites.

10.   railroad tracks, rolling stock.

11.   motor vehicles licensed for highway use, except when at Insured Location(s).

12.   underground mines, mine shafts, caverns, tunnels, or any property within such underground mines, mine shafts, caverns or tunnels.

13.   underwater piping and its contents, fittings, conduits, drains or flues, all situated outside Insured Location(s).

14.   air supported structures and the contents thereof.

15.   bridges, retaining walls, revetments, dams, dikes, reservoirs, jetties, wharves, piers, docks, levees.

16.   above ground transmission and distribution lines including wires, cables, poles, pylons, standards, towers or other supporting structures, which may be attendant to the transmission or distribution of electrical power, telephone or telegraph signals, and all other communications signals, whether audio or visual.  However, this exclusion does not apply when such property is situated at Insured Location(s).

17.   nuclear power plants.

18.   property in transit, except as otherwise provided under TRANSPORTATION.

19.   property sold by the Insured under conditional sale, trust agreement, installment payment or other deferred payment plan, or in which the Insured has retained a security interest, after delivery to customers.

20.   property owned by or for the interest of Specially Designated Foreign Nationals and Blocked Persons as determined by the United States Department of Treasury Office of Foreign Assets Control.

21.   property in the course of construction, alteration, extension, renovation, installation, erection, assembly, or testing and commissioning, except as otherwise provided under COURSE OF CONSTRUCTION.

22.   a.    vacant or unoccupied buildings, including any property therein, at Insured Location(s); or


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

  b.  property at Insured Location(s) where the Insured has ceased operations;

except as otherwise provided under VACANCY. A building is vacant or unoccupied when it does not contain enough property to conduct its customary business operations.

D.  **EXCLUSIONS**

  1.  This "policy" does not cover:

    a.  indirect or remote loss or damage.

    b.  delay, interruption of business, unless otherwise provided elsewhere in this "policy".

    c.  loss of market or loss of use.

    d.  loss or damage or deterioration arising from delay.

    e.  mysterious disappearance, loss or shortage disclosed upon taking inventory, or any unexplained loss.

    f.  loss resulting from the voluntary parting with title or possession of any property if induced by any fraudulent act or false pretense.

    g.  loss from enforcement of any law or ordinance:

      (1)  regulating the construction, repair, replacement, use or removal (including debris removal), of any property; or

      (2)  requiring the demolition of any property, including the cost of removing its debris;

    except as otherwise provided under DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION.

    h.  (1)  loss, damage, cost or expense incurred by the Insured; and

      (2)  fines or penalties imposed on the Insured at the order of any government agency, court or any other authority;

    in connection with the actual or suspected presence of "contaminants" arising or resulting from any cause whatsoever, except as otherwise provided under DECONTAMINATION COSTS and LAND AND WATER CONTAMINANTS CLEANUP, REMOVAL AND DISPOSAL.

    i.  loss, damage, cost or expense incurred by the Insured or by others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of products of the Insured or of the Insured's direct or indirect customers or suppliers, if such product or any portion of it is withdrawn or recalled from the market or from use by any person or organization because of the actual or suspected presence of "contaminants" or of a known or suspected defect, deficiency, inadequacy or dangerous condition.

  2.  This "policy" does not cover loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not covered by this "policy", contributing concurrently or in any other sequence to the loss or damage:

    a.  nuclear reaction, nuclear radiation or radioactive contamination. However, if direct physical loss or damage by fire or sprinkler leakage to Insured Property at Insured Location(s) results, then only such resulting physical loss or damage is covered by this "policy"; but not including any loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    b.    (1)    hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

        (a)    government or sovereign power (de jure or de facto);

        (b)    military, naval or air force;

        (c)    agent or authority of any party specified in (a) or (b) above.

        (2)    discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

        (3)    insurrection, rebellion, revolution, civil war, usurped power, or action taken by a governmental authority in hindering, combating or defending against such an event.

        (4)    seizure or destruction:

        (a)    under quarantine, custom regulation, nationalization, confiscation, expropriation; or

        (b)    by order of any governmental or public authority, except destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any perils not covered by this "policy".

    c.    risks of contraband, or illegal transportation or trade.

    d.    any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

        (1)    by the Insured or any proprietor, partner, director, trustee, officer or employee of the Insured; or

        (2)    by any proprietor, partner, director, trustee or officer of any business or entity (other than a common carrier) engaged by the Insured to do anything in connection with Insured Property at Insured Location(s).

        However, this "policy" does cover acts of direct physical loss or damage to Insured Property at Insured Location(s) intentionally caused by an employee of the Insured or any individual specified in (2) above and done without the knowledge of the Insured.

        In no event will this "policy" cover loss by theft by any individual specified in (1) or (2) above.

    e.    lack of the following services:

        (1)    incoming electricity, fuel, gas, refrigerant, steam, water;

        (2)    outgoing sewerage; or

        (3)    incoming or outgoing audio, data, video;

        all when caused by loss or damage to any property outside Insured Location(s).

        However, e.(1) and e.(2) above do not apply to SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT.

3.    This "policy" does not cover the following, but if physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s) results, then only such resulting physical loss or damage is covered by this "policy":

    a.    faulty workmanship, material, construction or design, from any cause.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

b.  loss or damage to stock or materials attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested or otherwise worked upon.

c.  deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

d.  settling, cracking, shrinking, bulging or expansion of:

    (1)  ceilings;

    (2)  floors;

    (3)  foundations, including any pedestal, pad, platform or any other property supporting machinery;

    (4)  pavements;

    (5)  roofs; or

    (6)  walls.

e.  changes:

    (1)  of temperature (except to machinery or equipment); or

    (2)  in relative humidity;

    all whether atmospheric or not.

f.  disease, infestation.

g.  insect, animal or vermin damage.

h.  evaporation or leakage of contents.

i.  accumulated effects of smog, smoke, vapor, liquid or dust.

j.  loss or damage caused by any act, error or omission (whether by the Insured or by others) in:

    (1)  planning, zoning, surveying, siting or developing property;

    (2)  establishing or enforcing building codes or standards for construction materials; or

    (3)  maintaining the following property or facilities:

        (a)  buildings or structures;

        (b)  improvements or changes in or additions to land or other property; or

        (c)  roads, water mains, sewers, drainage ditches, levees, dams or other facilities.

4.  This "policy" does not cover the following unless directly resulting from other physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s):

    a.  changes in color, flavor, texture, finish, odor or scent; or

    b.  shrinkage.

5.  This "policy" does not cover the following, except as otherwise provided under BOILER AND MACHINERY:

    a.  Explosion in or of the following property owned, operated or controlled by the Insured:

        (1)  steam boilers, including equipment attached to and forming a part thereof;


**Allianz** (Ⅲ)
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

(2)     steam turbines;

(3)     steam engines;

(4)     steam pipes connecting any of the foregoing; or

(5)     gas turbines.

This exclusion does not apply to explosion of accumulated gases or unconsumed fuel:

(a)     within the firebox or the combustion chamber of any fired vessel, other than gas turbines; or

(b)     within the flues or passages which conduct the gases of combustion therefrom.

However, if direct physical loss or damage to Insured Property at Insured Location(s) by fire, or by combustion explosion outside any of the property described in this exclusion, results, then only such resulting physical loss or damage is covered by this "policy".

b.     Rupture, bursting, cracking, burning, or bulging, of the following property owned, operated or controlled by the Insured:

(1)     steam boilers, including equipment attached to and forming a part thereof;

(2)     steam turbines;

(3)     steam engines;

(4)     steam pipes connecting any of the foregoing;

(5)     hot water boilers or other equipment for heating water;

(6)     pressure vessels, including equipment attached to and forming a part thereof; or

(7)     gas turbines.

However, if direct physical loss or damage to Insured Property at Insured Location(s) by fire, or by combustion explosion outside any of the property described in this exclusion, results, then only such resulting physical loss or damage is covered by this "policy".

c.     Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force. However, if direct physical loss or damage to Insured Property at Insured Location(s) by fire results, then only such resulting physical loss or damage is covered by this "policy".

d.     Electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment, caused by electrical currents generated artificially. However, if direct physical loss or damage to Insured Property at Insured Location(s) by fire results, then only such resulting physical loss or damage is covered by this "policy".

6.     Electronic Data Limitation

This "policy" does not cover:

a.     loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" from any cause whatsoever, except for losses directly caused by any of the following:

fire, lightning, explosion, windstorm, hail, aircraft or vehicle impact, riot, civil commotion, smoke, or leakage or automatic discharge from fire protection systems;

all occurring during the Policy Period to Insured Property at Insured Location(s).


**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    b.    the cost of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any Insured to determine, rectify or test for any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" excluded by a. above.

    c.    the cost for the repair, replacement or modification of any computer hardware, including microprocessors, firewalls, routers or hubs, computer application software, computer operating systems and related software, or computer networks and related hardware and software to correct any deficiencies, change any features, or otherwise prevent the occurrence of any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" excluded by a. above.

However, if fire or explosion results directly or indirectly from any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to, or breakdown of "electronic data" excluded by a. above, then only such resulting physical loss or damage by fire or explosion is covered by this "policy".

7.    Fungi Exclusion

    a.    This "policy" does not cover:

        (1)    any cost or expense incurred to clean up, remove or remediate any "fungi"; or

        (2)    any cost or expense incurred to test for, monitor or assess the existence, concentration or effects of "fungi".

    b.    The following definition applies wherever the defined term appears in quotation marks:

        (1)    The term "fungi" means any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungus.

8.    Terrorism Exclusion

Except as otherwise provided in SECTION IV. PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS, this "policy" does not cover:

    a.    loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with an "act of terrorism" regardless of any other cause or event contributing concurrently or in any other sequence to the loss; and

    b.    loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any other way relating to an "act of terrorism".

As used in a. and b. above only, the term "act of terrorism" means any act, including but not limited to the use of force or violence or the threat thereof, of any person or groups of persons, whether acting alone or on behalf of or in connection with any organizations or governments, committed for political, religious, ideological or similar purposes including the intention to influence any government or to put the public, or any section of the public, in fear.

However, this exclusion does not apply to the United States and its territories and possessions as defined in the United States federal Terrorism Risk Insurance Act of 2002 as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.


**Allianz** (IIl)
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

E.   **PROPERTY DAMAGE COVERAGE EXTENSIONS**

The following coverage extensions are subject to the applicable Program Sublimit(s), do not increase the Program Limits Of Liability, and are subject to all provisions of this "policy".

1.   **EARTH MOVEMENT**

a.   This "policy" covers direct physical loss or damage to Insured Property at Insured Location(s) caused by or resulting from "earth movement".

However, direct physical loss or damage by fire or explosion resulting from "earth movement" is not considered to be loss by "earth movement" within the terms and conditions of this "policy".

b.   Coverage provided under this extension does not apply to loss or damage caused by or resulting from "flood".

c.   The following definition applies wherever the defined term appears in quotation marks:

(1)   The term "earth movement" means any movement of earth, whether natural or man-made, including but not limited to:

(a)   earthquake and the resultant earthquake sprinkler leakage;

(b)   volcanic action;

(c)   landslide; or

(d)   subsidence;

regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

2.   **FLOOD**

a.   This "policy" covers direct physical loss or damage to Insured Property at Insured Location(s) caused by or resulting from "flood".

However, direct physical loss by fire, explosion or sprinkler leakage resulting from "flood" is not considered to be loss by "flood" within the terms and conditions of this "policy".

b.   The following definition applies wherever the defined term appears in quotation marks:

(1)   The term "flood" means:

(a)   storm surge;

(b)   rising water;

(c)   surface water;

(d)   waves;

(e)   tide or tidal wave;

(f)   rain accumulation;

(g)   runoff from natural or man-made object;

(h)   the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water, or the spray therefrom; or

(i)   surface water or sewer backup resulting from any of the foregoing;

all whether driven by wind or not, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.


**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

(2)   The term "High Hazard Zones For Flood" means:

(a)   all property at a "location" that is partially or totally situated in an area which at the time of loss or damage has been designated on a Flood Insurance Rate Map (FIRM) to be a Special Flood Hazard Area (SFHA);

(b)   all property in areas where the National Flood Insurance Program (NFIP) is not in effect, and where all property at a "location" is partially or totally situated in an area which is within a one hundred (100) year flood plain or its worldwide equivalent; or

(c)   all property at a "location" that is partially or totally protected by dams, dikes, levees or walls which are intended to protect such property from the level of a one hundred (100) year flood or its worldwide equivalent, regardless of any Zone or Area designation or assignment by Federal Insurance and Mitigation Administration (FIMA) or other recognized authority having jurisdiction.

(3)   The term "Moderate Hazard Zones For Flood" means:

(a)   all property at a "location" that is partially or totally situated in an area which at the time of loss or damage has been designated on a Flood Insurance Rate Map (FIRM) as Zone B or X-shaded but is not in a Special Flood Hazard Area (SFHA); or

(b)   all property in areas where the National Flood Insurance Program (NFIP) is not in effect, and where all property at a "location" is situated in an area which is outside of a one hundred (100) year flood plain or its worldwide equivalent, but partially or totally within a five hundred (500) year flood plain or its worldwide equivalent.

Regardless of any Zone or Area designation or assignment by Federal Insurance and Mitigation Administration (FIMA) or other recognized authority having jurisdiction, "Moderate Hazard Zones For Flood" does not include any property at a "location" that is partially or totally protected by dams, dikes, levees or walls which are intended to protect such property from the level of a one hundred (100) year flood or its worldwide equivalent.

## 3.   NAMED WINDSTORM

a.   This "policy" covers direct physical loss or damage to Insured Property at Insured Location(s) caused by or resulting from a "named windstorm".

However, direct physical loss by fire, explosion, sprinkler leakage or "flood" resulting from a "named windstorm" is not considered to be loss by a "named windstorm" within the terms and conditions of this "policy".

"Flood", if covered by this "policy", that results from the actions or effects of a "named windstorm" is subject to the deductible specified for NAMED WINDSTORM.

b.   The following definition applies wherever the defined term appears in quotation marks:

(1)   The term "named windstorm" means a storm or weather condition that:

(a)   has sustained wind speeds of at least thirty-nine (39) miles per hour; and


**Allianz** (ⅲ)
Global Risks

    (b)    has been declared by the United States Weather Service, the World Meteorological Organization Regional Specialized Meteorological Center (RSMC) or Tropical Cyclone Warning Center (TCWC) having regional responsibility, or any governmental agency or body having the authority to make such declarations, to be a hurricane, typhoon, tropical storm or cyclone.

Such storm or weather condition is considered a "named windstorm":

    (i)    during the period of time that conditions (a) and (b) above are met; and

    (ii)    during the seventy-two (72) hours immediately preceding the time when conditions (a) and (b) above are first met; and

    (iii)    during the seventy-two (72) hours immediately following the time when such storm or weather condition has been downgraded, meaning that the storm or weather condition no longer has sustained wind speeds of at least thirty-nine (39) miles per hour and the storm or weather condition is no longer considered as a hurricane, typhoon, tropical storm or cyclone by the United States National Weather Service, the World Meteorological Organization Regional Specialized Meteorological Center (RSMC) or Tropical Cyclone Warning Center (TCWC) having regional responsibility, or any governmental agency or body that had made such declarations.

## 4.    ACCOUNTS RECEIVABLE

a.    This "policy" is extended to cover any shortage in the collection of accounts receivable resulting from physical loss or damage not otherwise excluded by this "policy" to the Insured's accounts receivable records, including accounts receivable records stored as "electronic data", while anywhere, including while in transit to the extent provided under TRANSPORTATION, within the Policy Territory.

b.    This extension also covers the following:

    (1)    The interest charges on any loan to offset impaired collections pending repayment of such sum uncollectible as a result of such physical loss or damage.

           Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the recovery.

    (2)    Any other necessary and reasonable costs incurred to reduce the loss, to the extent the loss is reduced.

c.    In the event of loss to accounts receivable records, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

d.    The Insured agrees to use any suitable property or service owned or controlled by the Insured, or obtainable from other sources, in reducing the loss under this extension.

e.    If it is possible to reconstruct accounts receivable records so that no shortage is sustained, this "policy" covers only the reasonable and necessary costs incurred for material and time required to re-establish or reconstruct such records, and not for any costs covered by any other insurance.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    f.    When there is proof that a loss of accounts receivable records has occurred but the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of loss, such amount will be computed as follows:

        (1)    (a)    The monthly average of accounts receivable during the last available twelve (12) months, together with collection expenses in excess of normal collection costs and made necessary because of loss or damage; and

                (b)    the reasonable expenses incurred in re-establishing accounts receivable records following the loss or damage;

                will be adjusted in accordance with the percentage increase or decrease in the twelve (12) months average of monthly gross revenues which may have occurred in the interim.

        (2)    The monthly amount of accounts receivable as established in (1) above will be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred.

                Consideration will also be given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

    g.    The settlement of loss under this extension will be made within ninety (90) consecutive calendar days from the acceptance of a proof of loss by the Company.  All amounts recovered by the Insured on outstanding accounts receivable on the date of loss will belong and be paid to the Company up to the amount of loss paid by the Company.  All recoveries exceeding the amount paid by the Company will belong to the Insured.

    h.    No coverage is provided under this extension for any shortage resulting from:

        (1)    bookkeeping, accounting or billing errors or omissions; or

        (2)    alteration, falsification, manipulation, concealment, destruction or disposal of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of "money", "securities" or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

**5.**    **AUTOMATIC COVERAGE**

    a.    This "policy" is extended to cover Insured Property at any "location" within the Policy Territory that is rented, leased or purchased by the Insured after the Policy Inception Date.

    b.    Coverage provided under this extension:

        (1)    starts on the date of such rental, lease or purchase by the Insured; and

        (2)    ends when one of the following occurs:

                (a)    Such "location" is reported to and accepted by the Company.

                (b)    An agreement is reached that such "location" will not be covered by this "policy".

                (c)    The Time Limit specified for this extension has expired.  Such Time Limit starts on the date such "location" is rented, leased or purchased by the Insured.

        (3)    does not apply to any property:

                (a)    covered, in whole or in part, by any other insurance policy;


**Allianz** ⑪
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

        (b)    covered under ERRORS AND OMISSIONS; or

        (c)    covered under MISCELLANEOUS UNNAMED LOCATIONS.

6.    **BOILER AND MACHINERY**

    a.    This "policy" is extended to cover direct physical loss or damage to Insured Property at an Insured Location(s) resulting from an "accident" to an "object" at any Insured Location(s).

    b.    If an initial "accident" causes other "accidents", all will be considered as one "accident". All "accidents" that are the result of the same cause will be considered as one "accident".

    c.    Upon the discovery of a dangerous condition with respect to any "object", any representative of the Company may immediately suspend the insurance with respect to an "accident" to such "object" by written notice mailed or delivered to the First Named Insured at the Mailing Address specified in this "policy", or at the "location" of the "object".

        Insurance so suspended may be reinstated by the Company, but only by an endorsement issued by the Company to form a part of this "policy".  The Insured will be allowed the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

    d.    No coverage is provided under this extension for:

        (1)    breakdown of:

            (a)    any bedplate, structure or foundation supporting an "object" or any part thereof, not caused by an "accident" to such "object";

            (b)    any boiler setting, insulating or refractory material not caused by an "accident" to the "object";

            (c)    any draft tube, penstock or well casing;

            (d)    any "object" manufactured or held by the Insured for sale to others;

            (e)    any catalyst not caused by an "accident" to the "object" containing such catalyst or any other "object";

            (f)    any furnace, oven, or stove;

            (g)    any sewer piping, any underground gas piping, any piping forming a part of a sprinkler system, or any water piping other than:

                (i)    feed water piping between any boiler and its feed pumps or injectors;

                (ii)    boiler condensate return piping; or

                (iii)    water piping forming a part of a refrigerating or air conditioning system used for cooling, humidifying or space-heating purposes;

            (h)    any "object" until such time such "object" has been installed and completely tested at Insured Location(s).

            For the purposes of this extension, **completely tested** means such "object" has operated at Insured Location(s) in the capacity for which it was designed as part of the Insured's normal production process or processes.


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

(2)     an "accident" to any "object" while such "object" is being maintained or altered, if the "accident" is a direct result of such maintenance or alterations. However, if an "accident" not otherwise excluded by this "policy" results, then only such resulting "accident" is covered under this extension. Any opening, closing or transporting of an "object" will not be considered as a part of any maintenance or alterations.

e.     "Accident" does not include loss or damage:

(1)     (a)     from fire concomitant with or following an "accident"; or

        (b)     from the use of water or other means to extinguish fire.

(2)     from an "accident" caused directly or indirectly by fire or from the use of water or other means to extinguish fire.

(3)     (a)     from a combustion explosion outside an "object" concomitant with or following an "accident"; or

        (b)     from an "accident" caused directly or indirectly by a combustion explosion outside an "object".

        As respects any boiler or fired vessel, the furnace of such "object" or the gas passages from the furnace to the atmosphere will be considered as outside the "object".

(4)     from "flood".

(5)     from explosion of an "object" other than:

        (a)     any steam boiler, steam piping, steam turbine, gas turbine, steam engine; or

        (b)     any machine or electrical apparatus when such loss is caused by centrifugal force or mechanical breakdown.

(6)     as respects any boiler of the chemical recovery type, from an explosion within the furnace of any such boiler, or within the passages from the furnace to the atmosphere, whether or not such explosion:

        (a)     is contributed to or aggravated by an "accident" to any part of such boiler that contains steam or water; or

        (b)     is caused in whole or in part, directly or indirectly, by an "accident" to any "object" or a part thereof.

(7)     from an "accident" caused directly or indirectly by "earth movement".

(8)     (a)     from an "accident" caused directly or indirectly by nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled;

        (b)     from nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an "accident"; or

        (c)     covered in whole or in part by a contract of insurance, carried by the Insured, which also covers any hazard or peril of nuclear reaction or nuclear radiation.

        However, loss arising out of the use of radioactive isotopes in any form is covered under this extension.

**Allianz ⑪**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

   f.    This extension includes the Additional Coverages below.  Any Program Sublimit(s) specified for these Additional Coverages are part of and not in addition to the Program Sublimit(s) specified for this extension.

      (1)    **BOILER AND MACHINERY - AMMONIA CONTAMINATION**

          If, as a result of an "accident" at an Insured Location(s), ammonia comes into contact with or permeates Insured Property at any Insured Location(s) under refrigeration or in process requiring refrigeration, then the damage to such Insured Property and any salvage expense are covered herein.

      (2)    **BOILER AND MACHINERY - HAZARDOUS SUBSTANCES**

          If, as a result of an "accident" at an Insured Location(s), Insured Property at any Insured Location(s) is damaged by or contaminated with a substance (other than ammonia) declared by an authorized governmental agency to be hazardous to health, then the additional expenses incurred by the Insured for the cleanup, repair, replacement or disposal of that damaged or contaminated property is covered herein.

          Such additional expenses pertain only to expenses incurred by the Insured beyond those for which this "policy" would have provided coverage if no substance hazardous to health had been involved in the "accident".

      (3)    **BOILER AND MACHINERY - SPOILAGE**

          Coverage is provided herein for direct physical loss or damage to Insured Property at Insured Location(s) due to spoilage caused by lack of power, light, heat, steam or refrigeration resulting solely from an "accident" at an Insured Location(s).

      (4)    **BOILER AND MACHINERY - WATER DAMAGE**

          If, as a result of an "accident" at an Insured Location(s), Insured Property at any Insured Location(s) is damaged by water, then the damage to such Insured Property and any salvage expense are covered herein.

   g.    The following definitions apply wherever the defined terms appear in quotation marks:

      (1)    The term "accident" means a sudden and accidental breakdown of an "object" or a part thereof which manifests itself at the time of such breakdown by physical damage that necessitates repair or replacement of the "object" or a part thereof.

      (2)    The term "accidents" means more than one "accident".

      (3)    The term "object" means:

          (a)    any boiler;

          (b)    any fired or unfired pressure vessel;

          (c)    any refrigerating or air-conditioning system, piping and its accessory equipment; and

          (d)    any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

      (4)    The term "objects" means more than one "object".


**Allianz** (i)
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

7. **BRANDS AND LABELS**

If branded or labeled merchandise is physically damaged and the Company elects to take all or any part of such property, then the Insured may:

a.      stamp "salvage" on such property or its containers; or

b.      remove or obliterate the brands or labels thereon;

at the Company's expense, but only if doing so will not damage such property.

In either event, the Insured must re-label such property or its containers to be in compliance with any applicable law.

8. **COINSURANCE DEFICIENCY**

a.      This "policy" covers the deficiency in the amount of loss payable under the Insured's "local underlyer", if any, and its renewals, solely as a result of the application of a coinsurance clause (or an average clause) for physical loss or damage not otherwise excluded by such "local underlyer" and by this "policy" to Insured Property at Insured Location(s).

b.      No coverage is provided under this extension if the Insured is unable to recover any loss under such "local underlyer", and its renewals, if such inability is the result of intentional under-insurance by the Insured.

9. **CONSEQUENTIAL REDUCTION IN VALUE**

a.      This "policy" is extended to cover the reduction in value of personal property that is part of pairs, sets or components directly resulting from physical loss or damage not otherwise excluded by this "policy" to the other parts of pairs, sets or components.

If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts to the Company.

b.      No coverage is provided under this extension if such personal property:

(1)      is excluded under EXCLUDED PROPERTY; or

(2)      is not situated at Insured Location(s).

10. **CONTROL OF DAMAGED PROPERTY**

a.      In the event of physical damage not otherwise excluded by this "policy" to any personal property, except as excluded under EXCLUDED PROPERTY, at Insured Location(s), the Insured will have full rights to the possession and control of such physically damaged personal property provided proper testing is done to determine which personal property is physically damaged.

b.      The Insured using reasonable judgment will decide if such physically damaged personal property can be reprocessed or sold.  Personal property so judged by the Insured to be unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

11. **COURSE OF CONSTRUCTION**

a.      This "policy" is extended to cover:

(1)      new buildings or structures, including materials and supplies intended to become a permanent part thereof, while in the course of construction;



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

  (2)  existing buildings or structures, including materials and supplies intended to become a permanent part thereof, while in the course of alteration, extension or renovation;

  (3)  machinery and equipment, including materials and supplies intended to become a permanent part thereof, while in the course of installation, erection or assembly, including subsequent testing and commissioning of such machinery and equipment;

at Insured Location(s), all in which the Insured has an insurable interest at the time of loss.

However, the Program Sublimit(s) specified for this extension does not apply to Insured Property at Insured Location(s) that had already existed prior to such construction, alteration, extension, renovation, installation, erection, assembly, or testing and commissioning.

b.  This extension also covers:

  (1)  tools, materials and supplies used in the construction, alteration, extension, renovation, installation, erection, assembly, or testing and commissioning described in a. above;

  (2)  the interests of contractors and subcontractors in the property described in a. above to the extent of the Insured's legal liability for physical loss or damage not otherwise excluded by this "policy" to such property.  Such interests of contractors and subcontractors:

    (a)  are limited to such property for which they have been hired to perform work on; and

    (b)  do not extend to TIME ELEMENT COVERAGES or TIME ELEMENT COVERAGE EXTENSIONS provided elsewhere in this "policy".

c.  No coverage is provided under this extension for loss or damage to:

  (1)  any property:

    (a)  while in transit;

    (b)  while waterborne;

    (c)  excluded under EXCLUDED PROPERTY; or

    (d)  in the course of assembly which is intended to become finished goods;

  (2)  used or prototypical machinery and equipment while being tested and commissioned.  However, this exclusion does not apply to the testing and commissioning of used machinery and equipment that were removed from one Insured Location(s) and installed, erected or assembled at another;

  (3)  the interior portion of buildings under construction, alteration, extension or renovation from rain, sleet or snow, whether driven by wind or not, when the installation of the roof, walls or windows of such buildings has not been completed.

d.  Any Program Sublimit(s) specified for COC TESTING applies to the testing and commissioning of machinery and equipment described in a. above and any resulting TIME ELEMENT loss.  Such Program Sublimit(s) is part of and not in addition to the Program Sublimit(s) specified for COURSE OF CONSTRUCTION.



Nomura Holdings America Inc., Instinet Incorporated
Policy No. CLP 3012948

e.     Any Program Sublimit(s) specified for COC TIME ELEMENT applies to the TIME ELEMENT loss that results from physical loss or damage covered under COURSE OF CONSTRUCTION.  Such Program Sublimit(s) is part of and not in addition to the Program Sublimit(s) specified for COURSE OF CONSTRUCTION.

12.    **CURRENCY DEVALUATION**

This "policy" covers the deficiency in the amount of loss payable under the Insured's "local underlyer", if any, and its renewals, solely as a result of the official government devaluation of the currency in which the "local underlyer" is written.  Such amount of loss payable must be for physical loss or damage not otherwise excluded by such "local underlyer" and by this "policy" to Insured Property at Insured Location(s).

The Insured agrees to adjust the "local underlyer" values within thirty (30) consecutive calendar days after the date of the currency's devaluation.  Failure to do so will invalidate the coverage provided under this extension.

13.    **DEBRIS REMOVAL**

a.     This "policy" is extended to cover the reasonable and necessary costs incurred by the Insured to remove debris of any property, including property excluded under EXCLUDED PROPERTY, at Insured Location(s) provided such debris is a direct result of physical loss or damage not otherwise excluded by this "policy" to Insured Property at such Insured Location(s).

b.     No coverage is provided under this extension for:

(1)    the cost required to remove:

(a)    property excluded under EXCLUDED PROPERTY because of the actual or suspected presence of "contaminants" therein or thereon; or

(b)    the "contaminants" in or on property excluded under EXCLUDED PROPERTY;

whether or not the actual or suspected presence of "contaminants" results from physical loss or damage not otherwise excluded by this "policy".

(2)    any cost incurred by the Insured to satisfy the requirements of any law or ordinance that regulates the removal of "contaminants".

14.    **DECONTAMINATION COSTS**

a.     This "policy" is extended to cover:

(1)    loss or damage to Insured Property at Insured Location(s) caused by the actual presence of "contaminants" in or on such Insured Property; and

(2)    any additional cost incurred by the Insured in order to satisfy the minimum requirements of any law or ordinance in effect at the time of the loss or damage in (1) above that regulates the cleanup or removal of such "contaminants";

provided that the release, discharge or dispersal of the "contaminants" into or onto Insured Property is a direct result of physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s).

b.     No coverage is provided under this extension for:

(1)    raw materials, stock in process and finished goods, whether manufactured by the Insured or not;


**Allianz** ⑪
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    (2)    the cost required to remove:

        (a)    property excluded under EXCLUDED PROPERTY because of the actual or suspected presence of "contaminants" therein or thereon; or

        (b)    the "contaminants" in or on property excluded under EXCLUDED PROPERTY;

    whether or not the actual or suspected presence of "contaminants" results from physical loss or damage not otherwise excluded by this "policy".

15.    **DEFENSE COSTS**

This "policy" is extended to cover, at the option of the Company, the cost to defend any suit against the Insured alleging physical loss or damage not otherwise excluded by this "policy" to personal property of others in the custody of the Insured at Insured Location(s) to the extent of the Insured's liability therefore, even if such suit is groundless, false or fraudulent.

The Company may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

16.    **DEMOLITION AND INCREASED COST OF CONSTRUCTION**

    a.    This "policy" is extended to cover the reasonable and necessary costs incurred by the Insured described in b. below to satisfy the minimum requirements of any law or ordinance regulating the demolition, construction, repair, replacement, use or removal (including debris removal) of any buildings or structures, except as excluded under EXCLUDED PROPERTY, at Insured Location(s), provided that:

        (1)    such law or ordinance is in force on the date of physical loss or damage not otherwise excluded by this "policy" to such buildings or structures;

        (2)    the enforcement of such law or ordinance is a direct result of such physical loss or damage to such buildings or structures; and

        (3)    such buildings or structures are repaired or replaced within two (2) consecutive calendar years from the date of such physical loss or damage.

    b.    This extension, as respects the buildings or structures in a. above, covers:

        (1)    the additional cost incurred to repair or rebuild the physically damaged portion of such buildings or structures in a manner and with materials to satisfy the minimum requirements of such law or ordinance; or

        (2)    (a)    the cost:

            (i)    to demolish any undamaged portion of such buildings or structures; and

            (ii)    to remove the debris resulting from such demolition;

            provided such demolition is required to satisfy the minimum requirement of such law or ordinance;

        (b)    the cost to rebuild such undamaged portion that has been demolished subject to the same provisions under VALUATION that applies to the damaged portion of such buildings or structures; such cost to rebuild does not include any additional cost incurred to satisfy any law or ordinance; and



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

      (c)    the additional cost incurred in rebuilding or replacing both the damaged portion and the undamaged but demolished portion of such buildings or structures on the same site where the physical loss or damage occurred to satisfy the minimum requirements of such law or ordinance, and which would not have been incurred in the absence of such law or ordinance.

  c.    No coverage is provided under this extension for:

      (1)    loss due to any law or ordinance which the Insured was required to comply with had the loss or damage not occurred; or

      (2)    any costs incurred as a direct or indirect result of enforcement of any law or ordinance regulating the actual or suspected presence of "contaminants".

  d.    Any Program Sublimit(s) specified for this extension does not apply to b.(2)(b) above.

17.    **DIFFERENCE IN CONDITIONS**

This "policy" covers the difference in conditions and the difference in limits between this "policy" and a "local underlyer".

  a.    If a loss is covered by both this "policy" and a "local underlyer", and the conditions or limits of coverage in this "policy" are more favorable to the Insured than those in the "local underlyer", then coverage in this "policy" will be limited to the difference in such conditions or limits. Such coverage will apply excess of the coverage provided under the "local underlyer".

  b.    The Policy Deductible will be applied to the loss covered herein as follows:

      (1)    If the deductible applied under the "local underlyer" is:

         (a)    equal to the Policy Deductible, then the Policy Deductible will not be deducted from the loss covered herein;

         (b)    less than the Policy Deductible, then the difference between the two deductibles will be deducted from the loss covered herein;

         (c)    greater than the Policy Deductible, then the Policy Deductible will not be deducted from the loss covered herein. If the "local underlyer" is a "coordinated local policy", then coverage herein will reimburse the Insured for the difference between the two deductibles.

      (2)    If a loss is covered under a "local underlyer" but no deductible is applicable therein, then the Policy Deductible will be deducted from the loss covered herein.

  c.    Any coverage provided by a "local underlyer" that is not provided by this "policy" does not extend to this "policy".

  d.    If a "local underlyer" is a "declared local policy" and it is"

      (1)    canceled; or

      (2)    allowed to expire without a replacement with the same or broader coverage;

    during the Policy Period specified in this "policy", then coverage herein:

         (a)    will not drop down to provide the coverage that would have otherwise been provided under such "declared local policy"; and

         (b)    will apply as if such "declared local policy" is in full force and effect at the time of the loss.


**Allianz** (Ⅲ)
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

e.   If a "local underlyer" is a "declared local policy" and either no recovery can be made thereunder or any recovery thereunder is reduced because of the insolvency or any other financial failure of the insurance company that issued such "declared local policy", then coverage herein:

   (1)   will not drop down to provide the coverage that would have otherwise been provided under such "declared local policy"; and

   (2)   will apply as if such insurance company did not suffer any financial failure and the "declared local policy" is in full force and effect at the time of the loss.

f.   If a loss is covered by this "policy" but is excluded by the "local underlyer" issued for the jurisdiction where such loss occurred, then coverage in this "policy" will apply as if no such "local underlyer" existed, subject to the application of the Policy Deductible specified in this "policy".

18.   **ERRORS AND OMISSIONS**

a.   If loss or damage is not payable under this "policy" solely due to an error or unintentional omission:

   (1)   in the description of where Insured Property is physically situated within the Policy Territory;

   (2)   to include any "location", within the Policy Territory, that:

      (a)   is owned, rented or leased by the Insured as of the Policy Inception Date; or

      (b)   is purchased, rented or leased by the Insured during the Policy Period; or

   (3)   that results in cancellation of coverage for Insured Property under this "policy";

   then this "policy" is extended to cover such loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

b.   It is a condition precedent to recovery under this extension that any error or unintentional omission be:

   (1)   reported by the Insured to the Company when discovered; and

   (2)   corrected upon its discovery or within the period of time agreed to by the Company.

19.   **EXHIBITIONS, EXPOSITIONS, FAIRS OR TRADE SHOWS**

a.   The "policy" is extended to cover any personal property except as excluded under EXCLUDED PROPERTY:

   (1)   owned by the Insured;

   (2)   of others in the Insured's custody:

      (a)   to the extent the Insured is under obligation to keep such property covered for physical loss or damage not otherwise excluded by this "policy"; or

      (b)   to the extent of the Insured's legal liability for physical loss or damage not otherwise excluded by this "policy" to such property;

   while such property is situated on the premises of any exhibitions, expositions, fairs or trade shows within the Policy Territory.

**AZAPPG-CP 2000 (01-10)**                                                                                          **Page 35 of 71**



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    b.    No coverage is provided under this extension for any property:

        (1)    while in transit;

        (2)    while waterborne;

        (3)    at Insured Location(s);

        (4)    covered under COURSE OF CONSTRUCTION;

        (5)    covered under FINE ARTS;

        (6)    that is otherwise covered by this "policy" or any other policy issued by the Company to the Insured.

### 20. EXPEDITING EXPENSES

    a.    This "policy" is extended to cover the reasonable and necessary expenses incurred by the Insured:

        (1)    to pay for the temporary repair of physical damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s); and

        (2)    to expedite the permanent repair or replacement of such damaged property.

    b.    No coverage is provided under this extension for any expenses:

        (1)    recoverable elsewhere in this "policy"; or

        (2)    for permanent repair or replacement of such damaged property.

### 21. FINE ARTS

    a.    This "policy" is extended to cover physical loss or damage not otherwise excluded by this "policy" to "fine arts" while anywhere, including while in transit to the extent provided under TRANSPORTATION, within the Policy Territory.

    b.    No coverage is provided under this extension for:

        (1)    loss or damage if the "fine arts" cannot be replaced with others of like kind and quality, unless such "fine arts" is specifically declared to and accepted by the Company prior to the loss or damage; or

        (2)    loss or damage from any repairing, restoration or retouching process.

    c.    The following definition applies wherever the defined term appears in quotation marks:

        (1)    The term "fine arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, bric-a-brac, porcelains, and similar property of rarity, historical value or artistic merit.

            "Fine arts" do not include "money" or "securities".

            "Fine arts" also do not include automobiles, coins, stamps, furs, jewelry, precious metals, precious stones, semi-precious stones, watercraft or aircraft, unless such item is specifically declared to and accepted by the Company as "fine arts" prior to the physical loss or damage.

**Allianz ⑪**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

22. **FIRE DEPARTMENT SERVICE CHARGES**

    a.    This "policy" is extended to cover the following reasonable and necessary charges:

        (1)    fire department fire fighting charges imposed on the Insured as a result of responding to a fire in, on or exposing the Insured Property at Insured Location(s);

        (2)    costs incurred in restoring and recharging fire protection systems following physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s); or

        (3)    costs incurred for the water used for fighting a fire in, on or exposing the Insured Property at Insured Location(s).

    b.    This extension is subject to the Policy Deductible that would have applied had the loss or damage not otherwise excluded by this "policy" occurred.

23. **LAND AND WATER CONTAMINANTS CLEANUP, REMOVAL AND DISPOSAL**

    a.    This "policy" is extended to cover the reasonable and necessary cost for the cleanup, removal and disposal of "contaminants":

        (1)    from land; or

        (2)    from water or any other substance in or on land;

    at Insured Location(s) provided the release, discharge or dispersal of such "contaminants" is a direct result of physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s).

    b.    No coverage is provided under this extension for the cost:

        (1)    to test for, monitor or assess the existence, concentration or effects of any "contaminants", other than the testing which is performed in the course of extracting the "contaminants"; or

        (2)    to cleanup, remove and dispose of any "contaminants" from land, or from water or any other substance in or on land:

            (a)    at Insured Location(s) covered for personal property only.

            (b)    if the Insured fails to give written notice of loss to the Company within one hundred eighty (180) consecutive calendar days from the date of such physical loss or damage.

24. **MISCELLANEOUS UNNAMED LOCATIONS**

    a.    This "policy" is extended to cover Insured Property at any "location" within the Policy Territory that is either:

        (1)    not listed on the latest schedule submitted to and accepted by the Company; or

        (2)    listed on the latest schedule submitted to and accepted by the Company but for which the Insured has not submitted values for its interest.

    b.    No coverage is provided under this extension for any property:

        (1)    while in transit;

        (2)    while waterborne;


**Allianz** ⑪
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

(3)    while in the course of construction, alteration, extension, renovation, installation, erection, assembly, or testing and commissioning at any "locations" not owned, rented or leased by the Insured;

(4)    covered under AUTOMATIC COVERAGE;

(5)    covered under ERRORS AND OMISSIONS;

(6)    covered under EXHIBITION, EXPOSITION, FAIR OR TRADE SHOW; or

(7)    otherwise covered elsewhere in this "policy" or any other policy issued by the Company to the Insured.

**25.   NEIGHBOR'S RECOURSE AND TENANT'S LIABILITY**

a.    This "policy" is extended to cover the Insured's liability under the articles of any civil or commercial code:

(1)    as tenant or occupant:

(a)    toward the owner:

(i)    for physical loss or damage not otherwise excluded by this "policy" to real or personal property of the owner of the premises;

(ii)    for total or partial loss of use by the owner of the premises resulting from physical loss or damage not otherwise excluded by this "policy".

(b)    toward neighbors, co-tenants and other third parties for physical loss or damage not otherwise excluded by this "policy" to the real or personal property of neighbors, co-tenants and other third parties.

(2)    as landlord, for physical loss or damage not otherwise excluded by this "policy" to the personal property of tenants as a result of construction defects or lack of maintenance.

b.    Coverage provided under this extension is restricted to Insured Location(s) within the following countries:

(1)    Belgium;

(2)    France and the French Territories;

(3)    Greece;

(4)    Italy;

(5)    Luxembourg.

(6)    Portugal; and

(7)    Spain;

provided such countries are not excluded in the Policy Territory.

**26.   NON-ADMITTED INCREASED TAX LIABILITY**

a.    If a loss recovery under this "policy" cannot be paid in the country where the loss or damage occurred because of local law, such loss recovery is to be paid in the currency of this "policy" in a country designated by the Insured where such payment is legally permissible.


**Allianz** **Global Risks**

In the event of such a payment, the Company will pay in addition to the loss amount, the net amount required to offset local taxes on income with due consideration given to any tax relief or credit that accrues because of such payment.

The amount of such additional payment is to be calculated as follows:

Additional Payment = $[x (1 - z) / (1 - y)] - x$

where:

$x$ = Loss otherwise payable under this "policy" except for the operation of this extension, after due consideration of the applicable Policy Deductible.

$y$ = The net effective rate of the sum of:
any taxation (a positive number) and any tax credit or relief (a negative number) that accrues in the country where the loss payment is received.

$z$ = The net effective rate of the sum of:
any taxation (a positive number) and any tax credit or relief (a negative number) that accrues in the country where the loss occurred.

b.  The formula above will not apply if the calculation results in an amount less than zero.

c.  The rates referred to herein are the respective corporate income tax rates in effect on the date of the loss.

d.  The Insured will cooperate with the Company in making every reasonable effort to pay the loss or a portion thereof locally in the country where the loss or damage occurred.

e.  Any payment under this extension will be made only after completion by the Insured and acceptance by the Company of audited tax returns for the period in question for both the country where a payment hereunder is to be made and the country where the loss occurred.

f.  The actual payment under this extension will be adjusted and reduced by all appropriate tax credits or relief:

   (1)  the Insured and the local entity where the loss occurred are entitled to; or

   (2)  received by the Insured and the local entity where the loss occurred;

   provided that an income tax liability is incurred.

27.  **PROFESSIONAL FEES**

a.  This "policy" is extended to cover the reasonable expenses, excluding the cost of using the Insured's employees, incurred by the Insured, or by the Insured's representatives, for preparing the details of a claim resulting from a loss which would be payable under this "policy".

b.  No coverage is provided under this extension for expenses incurred by the Insured in utilizing or retaining the services of:

   (1)  attorneys;

   (2)  independent or public adjusters;

   (3)  insurance agents or brokers; or

   (4)  any subsidiary, related or associated entities either partially or wholly owned by an attorney or public adjuster.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948** _____

28. **PROTECTION AND PRESERVATION OF PROPERTY - PROPERTY DAMAGE**

    a.    This "policy" is extended to cover the reasonable and necessary expenses incurred by the Insured to temporarily protect or preserve Insured Property at Insured Location(s), provided such actions are necessary due to actual, or to prevent immediately impending, physical loss or damage not otherwise excluded by this "policy" to such Insured Property.

            The expenses so incurred will be borne by the Insured and by the Company to the extent of their respective interests. The Company's portion of such expenses is limited to the extent such expenses reduce the loss or damage which would have otherwise been recoverable under this "policy".

    b.    This extension is subject to the Policy Deductible that would have applied had such loss or damage occurred.

29. **RADIOACTIVE CONTAMINATION**

This "policy" is extended to cover direct physical loss or damage to Insured Property at Insured Location(s) caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted at such Insured Location(s), provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel at such Insured Location(s).

30. **SERVICE INTERRUPTION PROPERTY DAMAGE**

    a.    This "policy" is extended to cover direct physical loss or damage to Insured Property at Insured Location(s) when such physical loss or damage results from the interruption:

        (1)    of incoming services consisting of:

            (a)    electricity;

            (b)    fuel;

            (c)    gas;

            (d)    refrigerant;

            (e)    steam;

            (f)    water; or

        (2)    of outgoing sewerage service;

        that is caused by physical loss or damage not otherwise excluded by this "policy" to any property, including property excluded under EXCLUDED PROPERTY, of the supplier of such services situated:

                (i)    within the Distance Limitation specified for this extension from such Insured Location(s); or

                (ii)    within the Policy Territory, if no Distance Limitation is specified.

        The Insured will immediately notify the suppliers of services of any interruption of such services.

    b.    No coverage is provided under this extension:

        (1)    unless the "period of service interruption property damage" exceeds the Waiting Period specified for this extension;

**Allianz ⑪**
**Global Risks**

    (2)    if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such services.

  c.  The following definition applies wherever the defined term appears in quotation marks:

    (1)    The term "period of service interruption property damage" means the period of time:

        (a)    starting at the time when an interruption of specified services occurs; and

        (b)    ending when, with due diligence and dispatch, such services could be wholly restored.

## 31. TAX TREATMENT OF PROFITS

This "policy" is extended to cover the increased tax liability of the Insured directly resulting from physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s), provided the tax treatment of:

  a.  the profit portion of a loss payment under this "policy" involving finished goods manufactured by the Insured; or

  b.  the profit portion of a TIME ELEMENT loss payment under this "policy";

is greater than the tax treatment of profits that would have been incurred had no loss occurred.

## 32. TEMPORARY REMOVAL OF PROPERTY

  a.  When Insured Property is removed temporarily from an Insured Location(s) for the purpose of being repaired or serviced or in order to avoid impending physical loss or damage not otherwise excluded by this "policy", this "policy" is extended to cover such property:

    (1)    while at the "location" to which such property has been moved; and

    (2)    based on the same coverage provided by this "policy" for the Insured Location(s) from which such property was removed.

  b.  No coverage is provided under this extension for any property:

    (1)    covered, in whole or in part, elsewhere in this "policy".

    (2)    covered, in whole or in part, by any other insurance policy.

    (3)    removed for normal storage, processing or preparation for sale or delivery.

## 33. TRANSPORTATION

  a.  This "policy" is extended to cover the following personal property, except as excluded under EXCLUDED PROPERTY, while in transit within the Policy Territory:

    (1)    personal property owned by the Insured.

    (2)    personal property shipped to customers under F.O.B., C & F or similar terms. The Insured's contingent interest in such shipments is admitted.

    (3)    personal property of others in the actual or constructive custody of the Insured to the extent of the Insured's interest or legal liability.

    (4)    personal property of others sold by the Insured, that the Insured has agreed prior to the loss to insure during the course of delivery.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    b.    No coverage is provided under this extension for:

        (1)    samples in the custody of salespeople or selling agents.

        (2)    any property covered under import or export ocean marine insurance.

        (3)    waterborne shipments, except while on the navigable inland waters of the countries within the Policy Territory.

        (4)    airborne shipments unless by regularly-scheduled passenger airlines or air freight carriers.

        (5)    property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

        (6)    any transporting vehicle.

        (7)    property shipped between continents, except by land or air between Europe and Asia.

        (8)    all materials in transit which are otherwise covered under another policy.

    c.    Coverage Attachment and Duration:

        (1)    Coverage provided under this extension starts from the time the property leaves the original point of shipment for transit. It then covers continuously in the due course of transit:

            (a)    within the continent in which the shipment commences until the property arrives at the destination within such continent; or

            (b)    between Europe and Asia, for land or air shipments only, from the time shipment commences until the property arrives at the destination.

        (2)    However, coverage on export shipments not covered under ocean cargo policies ends when such personal property is loaded onboard overseas vessels or aircraft. Coverage on import shipments not covered under ocean cargo policies starts after discharge from overseas vessels or aircraft.

    d.    This extension also covers:

        (1)    general average and salvage charges on shipments covered while waterborne.

        (2)    direct physical loss or damage to such personal property caused by or resulting from:

            (a)    unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

            (b)    improper parties having gained possession of property through fraud or deceit.

    e.    Additional General Provisions:

        (1)    This extension will not inure directly or indirectly to the benefit of any carrier or bailee.

        (2)    The Insured has permission, without prejudicing this insurance, to accept:

            (a)    ordinary bills of lading used by carriers;

            (b)    released bills of lading;

            (c)    undervalued bills of lading; and


Allianz ⑪
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

        (d)     shipping or messenger receipts.

    (3)    The Insured may waive subrogation against railroads under side track agreements.

    Except as otherwise stated, the Insured will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

34.    **VACANCY**

This "policy" is extended to cover:

a.    vacant or unoccupied buildings, including Insured Property therein, at Insured Location(s); or

b.    Insured Property at Insured Location(s) where the Insured has ceased operations;

provided that:

    (1)    existing fire protection, watch and alarm services at such Insured Location(s) are maintained; and

    (2)    written notice is given to the Company prior to the 120th consecutive calendar day of cessation of operations, vacancy or unoccupancy.

The Insured's building is vacant or unoccupied when it does not contain enough property to conduct its customary business operations.

35.    **VALUABLE PAPERS AND RECORDS**

a.    This "policy" is extended to cover physical loss or damage not otherwise excluded by this "policy" to "valuable papers and records" while anywhere, including while in transit to the extent provided under TRANSPORTATION, within the Policy Territory.

b.    No coverage is provided under this extension for:

    (1)    loss or damage to "valuable papers and records" if such property cannot be replaced with others of like kind and quality, unless specifically declared to and accepted the Company prior to the loss or damage.

    (2)    loss or damage to property held as samples or for sale or for delivery after sale.

    (3)    errors or omissions in processing or copying;   all unless physical loss or damage not otherwise excluded by this "policy" to "valuable papers and records" results, in which event, only such resulting physical loss or damage is covered under this extension.

    (4)    deterioration, inherent vice, vermin or wear and tear;   all unless physical loss or damage not otherwise excluded by this "policy" to "valuable papers and records" results, in which event, only such resulting physical loss or damage is covered under this extension.

c.    The following definition applies wherever the defined term appears in quotation marks:

    (1)    The term "valuable papers and records" means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

        "Valuable papers and records" do not include "media", "money" or "securities".


Allianz
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

---

## SECTION III.   TIME ELEMENT

---

A.   **LOSS INSURED**

1.   This "policy" covers TIME ELEMENT loss, as provided under TIME ELEMENT COVERAGES, during the PERIOD OF LIABILITY directly resulting from physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s), or as otherwise provided in this section or endorsed hereon.

2.   This "policy" covers TIME ELEMENT loss only to the extent it cannot be reduced through:

a.   the use of any property or service owned or controlled by the Insured;

b.   the use of any property or service obtainable from other sources;

c.   working extra time or overtime; or

d.   the use of inventory;

at any "location".

3.   The Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the TIME ELEMENT loss.

4.   This "policy" covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section. The amount of such recoverable expenses will not exceed the amount by which the loss is reduced.

5.   Except as respects LEASEHOLD INTEREST, in determining the amount of loss payable, the Company will consider:

a.   the experience of the business before and after; and

b.   the probable experience during;

the PERIOD OF LIABILITY.

B.   **TIME ELEMENT COVERAGES**

1.   **COMMISSIONS, PROFITS AND ROYALTIES**

a.   The recoverable COMMISSIONS, PROFITS AND ROYALTIES loss is the actual loss sustained by the Insured during the PERIOD OF LIABILITY as respects the following:

(1)   "commissions";

(2)   "profits"; and

(3)   "royalties";

less any non-continuing expenses and charges.

b.   The COMMISSIONS, PROFITS AND ROYALTIES loss payable herein is the actual loss sustained on income to the Insured during the PERIOD OF LIABILITY under any royalty, licensing fee or commission agreements between the Insured and another party which is not realizable due to physical loss or damage not otherwise excluded by this "policy" to any property, except as excluded under EXCLUDED PROPERTY, of the other party at any "location" situated within the Policy Territory.

---


**Allianz** (Ⅲ)
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

c.   The Insured will influence, to the extent possible, said party with whom the agreements described above have been made to use any other machinery, supplies or "locations" in order to resume business so as to reduce the amount of loss herein, and the Insured will cooperate with that party in every way to effect this.

No coverage is provided herein for any costs to effect the above unless authorized in advance by the Company.

d.   In determining the indemnity payable herein, the Company will consider the amount of income derived from such agreements before and the probable amount of income after the date of such physical loss or damage.

e.   There is recovery herein but only if such physical loss or damage interrupts the delivery of goods in whole or in part to the Insured or for the Insured's account.

f.   The following definitions apply wherever the defined terms appear in quotation marks:

(1)   The term "commissions" means the income that would have been received by the Insured from the sale of goods not owned by the Insured.

(2)   The term "profits" means the amount that would have been received by the Insured from the sale of goods belonging to the Insured, in excess of the cost to the Insured of such goods.

(3)   The term "royalties" means the income the Insured is not able to collect under royalty or licensing agreements.

2.   **EXTRA EXPENSE**

a.   The recoverable EXTRA EXPENSE loss is the reasonable and necessary extra costs incurred by the Insured during the PERIOD OF LIABILITY as respects the following:

(1)   extra costs to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

(2)   extra costs of temporarily using property or facilities of the Insured or of others;

less any value remaining at the end of the PERIOD OF LIABILITY for any property obtained in connection with the above.

b.   No coverage is provided herein for:

(1)   any loss of income;

(2)   costs that normally would have been incurred in conducting the Insured's business during the same period had no physical loss or damage not otherwise excluded by this "policy" to Insured Property occurred;

(3)   cost of permanent repair or replacement of any property that has been destroyed or damaged; or

(4)   any expense recoverable elsewhere in this "policy".

3.   **GROSS EARNINGS**

Coverage hereunder does not apply to Insured Location(s) where GROSS PROFITS applies.

a.   The recoverable GROSS EARNINGS loss is the actual loss sustained by the Insured due to the necessary interruption of the Insured's business during the PERIOD OF LIABILITY as respects "gross earnings" less all charges and expenses that do not necessarily continue during such interruption.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

In determining the indemnity payable as the actual loss sustained by the Insured, the Company will consider the continuation of only those normal charges and expenses that would have been incurred had no interruption of the Insured's business occurred.

b.      There is recovery herein but only to the extent that the Insured is:

    (1)      wholly or partially prevented from producing goods or continuing business operations or services;

    (2)      unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

    (3)      unable to continue its operations or services during the PERIOD OF LIABILITY; and

    (4)      able to demonstrate a loss of sales for the operations, services or production prevented.

c.      The following definition applies wherever the defined term appears in quotation marks:

    (1)      The term "gross earnings" means:

        (a)      as respects:

            (i)      manufacturing operations, the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

            (ii)      mercantile or non-manufacturing operations, the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured; and

        (b)      all other earnings derived from the operation of the business.

Any amount recovered at selling price for physical loss or damage to finished goods or merchandise will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

4.      **GROSS PROFITS**

Coverage hereunder applies only to Insured Location(s) that are covered by a "local underlyer" that provides coverage for "gross profits".

a.      The recoverable GROSS PROFITS loss is the actual loss sustained by the Insured due to the necessary interruption of the Insured's business during the PERIOD OF LIABILITY as respects the following:

    (1)      Reduction In Sales:

The sum produced by applying the "rate of gross profits" to the amount by which the "sales" during the PERIOD OF LIABILITY fall short of the "standard sales".

In determining the Reduction In Sales, any amount recovered under SECTION II. PROPERTY DAMAGE at selling price for physical loss or damage to finished goods or merchandise will be considered to have been sold to the Insured's regular customers and will be credited against lost "sales".


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

(2) Increase In Cost Of Doing Business:

The additional expenditure necessarily and reasonably incurred by the Insured for the sole purpose of avoiding or diminishing the Reduction In Sales which, but for that expenditure, would have taken place during the PERIOD OF LIABILITY; but not exceeding the sum produced by applying the "rate of gross profits" to the amount of the reduction thereby avoided;

all less any sum saved during the PERIOD OF LIABILITY with respect to "insured fixed charges" as may cease or be reduced because of such interruption.

b. In determining the indemnity payable as the actual loss sustained by the Insured:

(1) If any fixed charges of the business are not covered herein, then in computing the amount recoverable as Increase In Cost Of Doing Business, that proportion only of the additional expenditure will be recoverable herein which the sum of the "net profits" and the "insured fixed charges" bears to the sum of the "net profits" and all the fixed charges.

(2) If, during the PERIOD OF LIABILITY, goods are sold or services are rendered at "locations" other than Insured Location(s) for the benefit of the Insured's business either by the Insured or by others on the Insured's behalf, the money paid or payable in respect of such "sales" or services will be included in arriving at the amount of "sales" during the PERIOD OF LIABILITY.

c. The Insured will:

(1) act with due diligence and dispatch in repairing or replacing physically damaged buildings and equipment to the same or equivalent physical and operating conditions that existed immediately prior to the damage; and

(2) take whatever actions are necessary and reasonable to minimize the loss payable herein.

d. Coverage provided herein for the Reduction In Sales due to contract cancellation is limited only to those "sales" that would have been earned under the contract during the PERIOD Of LIABILITY.

e. The following definitions apply wherever the defined terms appear in quotation marks:

(1) The term "gross profits" means the amount produced by adding to the "net profits" the amount of the "insured fixed charges", or if there be no "net profits", the amount of the "insured fixed charges" less that proportion of any loss from the Insured's business operations as the amount of the "insured fixed charges" bears to all fixed charges.

(2) The term "insured fixed charges" means all fixed charges unless specifically excluded herein or by endorsement.

(3) The term "net profits" means the net operating profits (exclusive of all capital receipts and accruals and all outlay properly chargeable to capital) resulting from the business of the Insured at Insured Location(s) after due provision has been made for all fixed charges and other expenses including depreciation but before the deduction of any taxes on profits.

(4) The term "rate of gross profits" means the rate of "gross profits" earned on "sales" during the twelve (12) consecutive calendar months immediately prior to the date of physical loss or damage not otherwise excluded by this "policy" to Insured Property.


**Allianz** (Ⓐ)
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

(5)    The term "sales" means the money paid or payable to the Insured for goods sold or delivered and for services rendered in the conduct of the business at Insured Location(s).

(6)    The term "standard sales" means the "sales" during that period in the twelve (12) consecutive calendar months immediately prior to the date of the physical loss or damage to Insured Property that corresponds with the PERIOD OF LIABILITY.

5.    **LEASEHOLD INTEREST**

a.    The recoverable LEASEHOLD INTEREST loss is as follows:

    (1)    If the lease agreement requires continuation of rent and

        (a)    if the property is wholly untenantable or unusable:
               the actual rent payable for the unexpired term of the lease; or

        (b)    if the property is partially untenantable or unusable:
               the proportion of the rent payable for the unexpired term of the lease; or

    (2)    If the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law:

        (a)    the "lease interest" for the first three (3) consecutive calendar months following the physical loss or damage; and

        (b)    the "net lease interest" for the remaining unexpired term of the lease.

b.    Coverage provided herein is limited to the Time Limit specified for LEASEHOLD INTEREST. Such Time Limit starts on the date of the physical loss or damage not otherwise excluded by this "policy".

c.    No coverage is provided herein for:

    (1)    any increase in loss resulting from:

        (a)    the suspension, cancellation or lapse of any license;

        (b)    the Insured exercising an option to cancel the lease; or

        (c)    any act or omission of the Insured that constitutes a default under the lease;

    (2)    the Insured's loss of LEASEHOLD INTEREST directly resulting from physical loss or damage to personal property.

d.    The following definitions apply wherever the defined terms appear in quotation marks:

    (1)    The term "lease interest" means the excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

    (2)    The term "net lease interest" means that sum which placed at 6% interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

6. **RENTAL INSURANCE**

    a.    The recoverable RENTAL INSURANCE loss is the actual loss sustained by the Insured during the PERIOD OF LIABILITY as respects:

        (1)    the fair rental value of any portion occupied by the Insured as respects real property in which the Insured has an insurable interest;

        (2)    the income reasonably expected from rentals of unoccupied or unrented portions of real property in which the Insured has an insurable interest; and

        (3)    the rental income from the rented portions of real property in which the Insured has an insurable interest according to bona fide leases, contracts or agreements in force at the time of physical loss or damage not otherwise excluded by this "policy" to such real property;

    all not to include non-continuing charges and expenses.

    b.    No coverage is provided herein for any loss of rental income during any period in which Insured Property would not have been tenantable for any reason other than physical loss or damage not otherwise excluded by this "policy", except as otherwise provided under EXTENDED PERIOD OF LIABILITY.

C. **TIME ELEMENT EXCLUSIONS**

In addition to the exclusions stated elsewhere in this "policy", this "policy" does not cover:

1.    Any TIME ELEMENT loss during any idle period, including but not limited to when production, operation, service, or delivery or receipt of goods would cease or would not have taken place or would have been prevented due to:

    a.    physical loss or damage excluded by this "policy" on or off Insured Location(s);

    b.    planned or rescheduled shutdown;

    c.    strikes or other work stoppage; or

    d.    any reason other than physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s).

2.    Any increase in the TIME ELEMENT loss due to:

    a.    suspension, cancellation or lapse of any lease, contract, license or orders;

    b.    fines or damages for breach of contract or for late or non-completion of orders;

    c.    penalties of any nature; or

    d.    any other consequential or remote loss.

    However, 2.a. and 2.d. above do not apply to GROSS PROFITS and EXTENDED PERIOD OF LIABILITY.

3.    Any TIME ELEMENT loss resulting from loss or damage to finished goods manufactured by the Insured, nor the time required for their reproduction. However, this exclusion does not apply to COMMISSIONS, PROFITS AND ROYALTIES and GROSS PROFITS.

4.    Any TIME ELEMENT loss resulting from physical loss or damage covered under TRANSPORTATION.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

D.    **TIME ELEMENT COVERAGE EXTENSIONS**

The following coverage extensions are subject to the applicable Program Sublimit(s), do not increase the Program Limits Of Liability, and are subject to all provisions of this "policy".

1.    **CONTINGENT TIME ELEMENT**

a.    This "policy" is extended to cover the actual loss sustained and the EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage not otherwise excluded by this "policy" to any property, except as excluded under EXCLUDED PROPERTY, at any "location" of direct suppliers or direct customers, provided that:

(1)    such physical loss or damage prevents:

(a)    such direct suppliers from supplying goods or services to the Insured; or

(b)    such direct customers from receiving goods or services from the Insured;

(2)    such direct suppliers have a contractual obligation with the Insured to supply goods or services to the Insured;

(3)    such direct customers have a contractual obligation with the Insured to receive goods or services from the Insured;

(4)    such "location" of direct suppliers or direct customers is situated within the Policy Territory.

b.    As used herein, **direct suppliers** or **direct customers** do not include any company supplying to or receiving from Insured Location(s) electricity, fuel, gas, refrigerant, sewage, steam, water, audio, data or video.

2.    **EXTENDED PERIOD OF LIABILITY**

a.    GROSS EARNINGS, RENTAL INSURANCE and IMPOUNDED WATER are extended to cover the additional length of time:

(1)    as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no physical loss or damage not otherwise excluded by this "policy" occurred;

(2)    starting on the date the applicable PERIOD OF LIABILITY ends.

b.    Coverage provided under this extension:

(1)    as respects GROSS EARNINGS and RENTAL INSURANCE:
is subject to the Time Limit specified for EXTENDED PERIOD OF LIABILITY - GROSS EARNINGS AND RENTAL INSURANCE;

(2)    as respects IMPOUNDED WATER:
is subject to the Time Limit specified for EXTENDED PERIOD OF LIABILITY - IMPOUNDED WATER.

The Time Limit starts on the date the applicable PERIOD OF LIABILITY ends.

3.    **IMPOUNDED WATER**

a.    This "policy" is extended to cover the actual loss sustained and the EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business caused by inadequate water supply.


**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

b.   It is a condition precedent to recovery under this extension that such inadequate water supply is a direct result of the release of water:

(1)   stored behind dams or in reservoirs;

(2)   used for any manufacturing purpose, including but not limited to as raw material or for power; and

(3)   at Insured Location(s);

caused by physical loss or damage not otherwise excluded by this "policy" to such dams or reservoirs, or to equipment connected thereto.

c.   Notwithstanding the coverage provided under this extension and unless EXCLUDED PROPERTY is amended by endorsement accordingly, dams and reservoirs are not Insured Property and physical loss or damage thereto is not covered by this "policy".

4.   **INGRESS/EGRESS**

a.   This "policy" is extended to cover the actual loss sustained and the EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business, provided that:

(1)   the interruption directly results from the prevention of ingress to or egress from Insured Location(s), whether or not Insured Property at such Insured Location(s) is damaged;

(2)   the prevention in (1) above is caused by physical loss or damage not otherwise excluded by this "policy" to any property, including property excluded under EXCLUDED PROPERTY; and

(3)   the property in (2) above is situated within the Distance Limitation specified for this extension from such Insured Location(s) where ingress to or egress from is prevented.

b.   Coverage provided under this extension is limited to the Time Limit specified for this extension.  Such Time Limit starts on the date of the physical loss or damage described in a.(2) above.

c.   No coverage is provided under this extension if the prevention described in a. above results from picketing or other action by strikers, except for physical loss or damage not otherwise excluded by this "policy".

5.   **ORDER OF CIVIL OR MILITARY AUTHORITY**

a.   This "policy" is extended to cover the actual loss sustained and the EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business, provided that:

(1)   the interruption directly results from an order of a civil or military authority that specifically prohibits access to Insured Location(s);

(2)   the order in (1) above is caused by physical loss or damage not otherwise excluded by this "policy" to any property, including property excluded under EXCLUDED PROPERTY; and

(3)   the property in (2) above is situated either:

(a)   at the Insured Location(s) to which access is prohibited; or

(b)   within the Distance Limitation specified for this extension from the Insured Location(s) to which access is prohibited.



**Allianz** Ⓐ
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    b.    Coverage under this extension is limited to the Time Limit specified for this extension. Such Time Limit starts on the date such order of a civil or military authority comes into effect.

6.    **PROTECTION AND PRESERVATION OF PROPERTY - TIME ELEMENT**

    a.    This "policy" is extended to cover the actual loss sustained by the Insured for a period of time not to exceed:

        (1)    forty-eight (48) hours prior to; and

        (2)    forty-eight (48) hours after;

    the Insured first taking reasonable action for the temporary protection and preservation of Insured Property at Insured Location(s) provided such action is necessary to prevent immediately impending physical loss or damage not otherwise excluded by this "policy" to such Insured Property.

    b.    This extension is subject to the Policy Deductible that would have applied had such loss or damage occurred.

7.    **RELATED REPORTED VALUES**

    If:

    a.    reported TIME ELEMENT values include values for "locations" used by the Insured (such as branch stores, sales outlets and other plants) but such "locations" are not listed on the latest schedule submitted to and accepted by the Company; and

    b.    a TIME ELEMENT loss results at such "locations" due to physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s);

    then this "policy" is extended to cover such resulting TIME ELEMENT loss in accordance with the coverage applicable at the Insured Location(s) where such physical loss or damage occurred.

8.    **RESEARCH AND DEVELOPMENT**

    a.    GROSS EARNINGS and GROSS PROFITS are extended to cover the actual loss sustained by the Insured as respects:

        (1)    continuing fixed charges; and

        (2)    "Ordinary Payroll";

    directly attributable to the necessary interruption of the Insured's research and development activities that in themselves would not have produced income during the PERIOD OF LIABILITY. Such interruption must result from physical loss or damage not otherwise excluded by this "policy" to Insured Property at Insured Location(s).

    b.    The PERIOD OF LIABILITY for this extension:

        (1)    starts on the date of such physical loss or damage; and

        (2)    ends on the date when such Insured Property could be repaired or replaced and made ready for operations, but not to be limited by Policy Expiration Date.

**Allianz ⑪**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

9. **SERVICE INTERRUPTION TIME ELEMENT**

   a. This "policy" is extended to cover the actual loss sustained and the EXTRA EXPENSE incurred by the Insured at Insured Location(s) during the "period of service interruption time element" when such loss results from the interruption:

   (1) of incoming services consisting of:

   (a) electricity;

   (b) fuel;

   (c) gas;

   (d) refrigerant;

   (e) steam; and

   (f) water, or

   (2) of outgoing sewerage service;

   that is caused by physical loss or damage not otherwise excluded by this "policy" to any property, including property excluded under EXCLUDED PROPERTY, of the supplier of such services situated:

   (i) within the Distance Limitation specified for this extension from such Insured Location(s); or

   (ii) within the Policy Territory, if no Distance Limitation is specified.

   The Insured will immediately notify the suppliers of services of any interruption of such services.

   b. No coverage is provided under this extension:

   (1) unless the "period of service interruption time element" exceeds the Waiting Period specified for this extension; or

   (2) if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

   c. The following definition applies wherever the defined term appears in quotation marks:

   (1) The term "period of service interruption time element" means the period of time:

   (a) starting at the time when an interruption of specified services occurs;

   (b) ending when:

   (i) with due diligence and dispatch such services could be wholly restored; and

   (ii) the Insured Location(s) receiving such services could or would have resumed normal operations following the restoration of such services under the same or equivalent physical and operating conditions as provided by PERIOD OF LIABILITY; and

   (c) limited to only those hours during which the Insured would or could have used such services if it had been available.

   The "period of service interruption time element" does not extend to include the interruption of the Insured's business caused by any reason other than the interruption of the specified services.



10. **SOFT COSTS**

    a.    This "policy" is extended to cover the actual loss sustained by the Insured as respects "soft costs" during the PERIOD OF LIABILITY for COURSE OF CONSTRUCTION.

    b.    Any Program Sublimit(s) specified for this extension is part of and not in addition to the Program Sublimit(s) specified for COURSE OF CONSTRUCTION.

    c.    The following definition applies wherever the defined term appears in quotation marks:

        (1)    The term "soft costs" means the following expenses over and above the normal expenses at Insured Location(s) covered under COURSE OF CONSTRUCTION:

            (a)    Construction loan fees:  the additional cost incurred to rearrange loans necessary for the completion of construction, alteration, extension, renovation, erection, installation or assembly, including the:

                (i)    cost to arrange refinancing;

                (ii)    accounting work necessary to restructure financing;

                (iii)    legal work necessary to prepare new documents; and

                (iv)    charges by the lenders for the extension or renewal of loans necessary.

            (b)    Commitment fees, leasing and marketing expenses:  the cost of returning any commitment fees received from prospective tenants or purchasers and the cost of re-leasing and marketing due to loss of tenants or purchasers.

            (c)    Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, alteration, extension, renovation, erection, installation, assembly.

            (d)    Carrying costs:  property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

## E.    PERIOD OF LIABILITY

    1.    The PERIOD OF LIABILITY applying to all TIME ELEMENT COVERAGES, except GROSS PROFITS and LEASEHOLD INTEREST and as shown below, or if otherwise provided under the TIME ELEMENT COVERAGE EXTENSIONS, is as follows:

        a.    For building and equipment, the period of time:

            (1)    starting on the date of physical loss or damage not otherwise excluded by this "policy"; and

            (2)    ending when with due diligence and dispatch the building and equipment could be:

                (a)    repaired or replaced; and

                (b)    made ready for operations;

             under the same or equivalent physical and operating conditions that existed immediately prior to such physical loss or damage.

        Such period of time is not limited by the Policy Expiration Date.


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

b.   For property covered under COURSE OF CONSTRUCTION, the equivalent of the period of time in a. above will be applied to the level of business that would have been reasonably achieved after the construction, alteration, extension, renovation, installation, erection, assembly or testing and commissioning, and startup that would have been completed had no physical loss or damage not otherwise excluded by this "policy" occurred.

Due consideration will be given to the actual experience of the business compiled after completion of the construction, alteration, extension, renovation, installation, erection, assembly or testing and commissioning, and startup.

c.   For stock-in-process and mercantile stock, including finished goods not manufactured by the Insured, the period of time required with the exercise of due diligence and dispatch:

(1)   to restore stock-in-process to the same state of manufacture in which it stood at the inception of the interruption of the Insured's business; and

(2)   to replace physically damaged mercantile stock.

d.   For raw materials and supplies, the period of time:

(1)   of the actual interruption of the Insured's business resulting from the Insured's inability to get suitable raw materials and supplies similar to the ones damaged; but

(2)   limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

e.   For direct physical damage to "media", the period of time required to copy from backups or from originals of a previous generation.  Such period of time does not include research, engineering, programming, assembling or gathering information, or any other period of time necessary to restore or recreate the "electronic data" lost.

f.   For direct physical damage to exposed films, records, manuscripts and drawings, the period of time required to copy from backups or from originals of a previous generation. Such period of time does not include research, engineering or any other  period of time necessary to restore or recreate the information lost.

2.   The PERIOD OF LIABILITY applying to GROSS PROFITS is as follows:

a.   The period of time:

(1)   starting on the date of physical loss or damage not otherwise excluded by this "policy"; and

(2)   ending no later than the Time Limit specified for GROSS PROFITS;

during which period the results of the business is directly affected by such physical loss or damage.

Such period of time is not limited by the Policy Expiration Date.

b.   For property covered under COURSE OF CONSTRUCTION, the period:

(1)   starting on the date that the Insured's business would have commenced if physical loss or damage not otherwise excluded by this "policy" had not occurred; and

(2)   ending no later than the  Time Limit specified for GROSS PROFITS;

during which period the results of the business is directly affected by such damage.

Such period of time is not limited by the Policy Expiration Date.


**Allianz**
**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

> The "rate of gross profits" and "standard sales" are based on the experience of the business after the completion of construction, alteration, extension, renovation, installation, erection, assembly or testing and commissioning, and on the probable experience during the PERIOD OF LIABILITY.

3. The PERIOD OF LIABILITY does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

   a. making changes to the equipment;

   b. making changes to the buildings or structures, except as provided under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   c. re-staffing or re-training employees.

4. If more than one PERIOD OF LIABILITY apply, such periods will not be cumulative.

### F.  TIME ELEMENT INTERDEPENDENCY

If physical loss or damage not otherwise excluded by this "policy" at an Insured Location(s) results in a TIME ELEMENT loss at other Insured Location(s), then such resulting TIME ELEMENT loss will be adjusted based on the TIME ELEMENT COVERAGES or TIME ELEMENT COVERAGE EXTENSIONS that apply to the Insured Location(s) where such physical loss or damage occurred.

## SECTION IV.    PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS

### A.  FRANCE AND THE FRENCH TERRITORIES

This "policy" does not cover:

1. loss or damage caused by any event declared as a natural disaster pursuant to French Law No. 82-600 of 13 July 1982 as amended by subsequent legislation.

2. loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any "act of terrorism" in France and in French Territories regardless of any cause or event contributing concurrently or in any other sequence to the loss.

   As used herein only, the term "act of terrorism" means any act defined in Article 421-1 and Article 421-2 of the French Penal Act and any subsequent regulations.

3. any TIME ELEMENT loss at any "location" resulting from 1. or 2. above.

### B.  GERMANY

1. This "policy" does not cover:

   a. loss or damage caused by "sturmflut" in

      (1)  Schleswig-Holstein;

      (2)  Niedersachsen;

      (3)  Mecklenburg-Vorpommern;

      (4)  Bremen; and

      (5)  Hamburg;

      all in Germany.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

        b.    any TIME ELEMENT loss at any "location" resulting from a. above.

    2.    The following definition applies wherever the defined term appears in quotation marks:

        a.    The term "sturmflut" means a general and temporary condition of partial or complete inundation of dry land areas caused by or resulting from the overflow of river, lake, bay, estuary or tidal waters because of the rapid accumulation of runoff or surface waters from any source or from wind driven storm surge, tidal wave, high tide, flood tide, wave wash or tsunami.

## C.   GREAT BRITAIN

This "policy" does not cover:

    1.    in respect of England, Wales and Scotland only, but not the territorial seas adjacent thereto as defined by the Territorial Sea Act of 1987, loss or damage caused by, resulting from or in connection with:

        a.    any "act of terrorism", regardless of any other cause or event contributing concurrently or in any other sequence to such "act of terrorism"; and

        b.    any action taken:

            (1)    in controlling, preventing or suppressing any "act of terrorism"; or

            (2)    in any other way related to any "act of terrorism".

    As used herein only, the term "act of terrorism" means any act of persons acting on behalf of, or in connection with, any organization which carries out activities directed towards the overthrowing or influencing, by force or violence, of the government of the United Kingdom or any other government de jure or de facto.

    2.    any TIME ELEMENT loss at any "location" resulting from 1. above.

## D.   NAMIBIA AND SOUTH AFRICA

This "policy" does not cover:

    1.    loss or damage in Namibia or South Africa caused by, resulting from or in connection with any event for which a fund has been established in terms of the War Damage Insurance and Compensation Act, 1976 (No. 85 of 1976) or any other similar Act operative in Namibia or South Africa; and

    2.    any TIME ELEMENT loss at any "location" resulting from 1. above.

Conditions of payment or delays in payment under such Act does not nullify this exclusion.

## E.   NORTHERN IRELAND

This "policy" does not cover:

    1.    loss or damage in Northern Ireland caused by, resulting from or in connection with any event which falls under the Criminal Damage (Compensation) (Northern Ireland) Order 1977 (No. 1247 (N.I. 14)); and

    2.    any TIME ELEMENT loss at any "location" resulting from 1. above.

Conditions of payment or delays in payment under such Order does not nullify this exclusion.


**Allianz ⑪**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

F.  **NORWAY**

This "policy" does not cover:

1.  loss or damage in Norway caused by any event which falls under the Norwegian Natural Damage Insurance Act (Act. No. 70 of June 16, 1989) as amended by subsequent legislation; and

2.  any TIME ELEMENT loss at any "location" resulting from 1. above.

Conditions of payment or delays in payment under such Act does not nullify this exclusion.

G.  **SPAIN**

This "policy" does not cover:

1.  loss or damage in Spain or in any Spanish Territory which:

    a.  falls under the regulation of the Consorcio de Compencacion de Seguros (Consorcio); and

    b.  is declared by the Consorcio to be within the conditions of the coverage it provides;

2.  loss or damage in Spain or any Spanish Territory directly or indirectly caused by or through or in consequence of any events leading to the declaration of a state of emergency, otherwise known as Calamidad Nacional, by the Spanish Government; and

3.  any TIME ELEMENT loss at any "location" resulting from 1. or 2. above.

Conditions of payment or delays in payment by the Consorcio or by the Spanish Government, in the case of Calamidad Nacional, does not nullify this exclusion.

H.  **UNITED STATES AND ITS TERRITORIES AND POSSESSIONS**

If the provisions of this "policy" conflict with the laws of any jurisdiction in the United States and its territories and possessions where this "policy" applies, and if certain provisions are required by such laws to be stated in this "policy", then this "policy" will be read so as to eliminate such conflict and is deemed to include such provisions for Insured Location(s) within such jurisdiction.

## SECTION V.    LOSS ADJUSTMENT AND SETTLEMENT

A.  **CURRENCY FOR LOSS PAYMENT**

Losses will be adjusted and paid in the currency of the United States unless otherwise agreed upon by the Company.

In the event of a loss adjustment involving currency conversion, the rate of exchange will be calculated as follows:

1.  The Policy Deductible and the Program Limits Of Liability will be converted using the rate of exchange published in The Wall Street Journal on the date of loss.

2.  As respects loss or damage to real and personal property:

    a.  the cost to repair or replace real and personal property will be converted using the rate of exchange published in The Wall Street Journal on the date such cost of repair or replacement is incurred.

    b.  if such property is not repaired or replaced, the conversion will be based on the rate of exchange published in The Wall Street Journal on the date of loss.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

3.  As respects TIME ELEMENT loss, the conversion will be determined by adding:

    a.  the rate of exchange published in The Wall Street Journal on the date of loss; and

    b.  the rate of exchange published in The Wall Street Journal on the last day of the PERIOD OF LIABILITY;

and dividing the sum by two.

If The Wall Street Journal was not published on the stipulated date, the rate of exchange will be that as published on the next business day.

## B.   LOSS ADJUSTMENT AND LOSS PAYABLE

Loss, if any, will be adjusted with and payable to the First Named Insured, or as may be directed by the First Named Insured.  Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee or loss payee in the Certificates of Insurance on file with the Company.

## C.   LOSS CONDITIONS

### 1.   ABANDONMENT

There may be no abandonment of any property to the Company.

### 2.   APPRAISAL

    a.  If the Insured and the Company fail to agree on the amount of loss, each will, upon the written demand of the other, select a competent and disinterested appraiser after:

        (1)  the Insured has fully complied with all provisions of this "policy", including those provided under REQUIREMENTS IN CASE OF LOSS; and

        (2)  the Company has received a signed and sworn to proof of loss from the Insured.

    Within thirty (30) consecutive calendar days from the date of such demand, each will notify the other of the appraiser selected.

    b.  The appraisers will first select a competent and disinterested umpire.  If the appraisers fail to agree on an umpire within thirty (30) consecutive calendar days from the date of their selection, then, upon the request of the Insured or the Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending.

    c.  The appraisers will appraise the amount of loss:

        (1)  stating separately:

            (a)  the "actual cash value" as of the date of loss;

            (b)  the replacement cost as of the date of loss; and

            (c)  the amount of loss;

        for each item of direct physical loss or damage.

        (2)  for each of the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGE EXTENSIONS.

    d.  If the appraisers fail to agree, they will submit their differences to the umpire.  An award agreed to in writing by any two will determine the amount of loss.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    e.    The Insured and the Company will each:

        (1)    pay its chosen appraiser; and

        (2)    bear equally the other expenses of the appraisal and the umpire.

    f.    A demand for appraisal will not relieve the Insured of its continuing obligation to comply with the terms and conditions of this "policy", including those provided under REQUIREMENTS IN CASE OF LOSS.

    g.    The Company will not be held to have waived any of its rights by any act relating to the appraisal.

## 3.   ASSIGNMENT OF POLICY

Assignment of this "policy" is not valid except with the written consent of the Company.

## 4.   COLLECTION FROM OTHERS

The Company will not be liable for any loss to the extent that the Insured has collected for such loss from others.

## 5.   COMPANY OPTION

The Company has the option to take all or any part of damaged property at the agreed or appraised value within a reasonable time.

The Company must give notice to the Insured of its intention to do so within thirty (30) consecutive calendar days after receipt of the signed and sworn to proof of loss required by this "policy".

## 6.   JURISDICTION

This "policy" is governed by the laws of the United States. Any disputes arising hereunder will be exclusively subject to the jurisdiction of the United States.

## 7.   PARTIAL PAYMENT OF LOSS SETTLEMENT

In the event of a loss occurring which has been ascertained by the Company to be recoverable under this "policy", the Company will advance mutually agreed upon partial payments for such loss, subject to the provisions of this "policy".

To obtain such partial payments, the Insured will submit a signed and sworn to proof of loss as described in this "policy" with adequate supporting documentation.

## 8.   REQUIREMENTS IN CASE OF LOSS

The Insured will:

    a.    give immediate written notice to the Company of any loss.

    b.    protect the property from further loss or damage.

    c.    promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, "actual cash value", replacement costs and amount of loss claimed.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    d.    give a signed and sworn to proof of loss to the Company within ninety (90) consecutive calendar days after the date of loss, unless that time is extended in writing by the Company. The proof of loss must state the knowledge and belief of the Insured as to the following:

        (1)    The time and origin of the loss.

        (2)    The interest of the Insured and of all others in the property;

        (3)    All encumbrances on the property.

        (4)    The "actual cash value" and replacement cost of each item and the amount of loss to each item.

        (5)    All other contracts of insurance, whether valid or not, covering any of the property.

        (6)    Any changes in the exposures, situation, occupation, possession, title or use of the property since the Policy Inception Date.

        (7)    By whom and for what purpose the Insured Location(s) was occupied on the date of loss, and whether or not it then stood on leased ground.

    e.    furnish to the Company a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

    f.    as often as may be reasonably required:

        (1)    exhibit to any person designated by the Company all that remains of any property;

        (2)    submit to examination under oath by any person designated by the Company and sign the written records of examinations; and

        (3)    produce for examination at the request of the Company:

            (a)    all books of accounts, business records, bills, invoices and other vouchers; or

            (b)    certified copies of (a) above if originals are lost;

            at such reasonable time and place as may be designated by the Company or its representative and permit extracts and machine copies thereof to be made.

9. **SALVAGE AND RECOVERY**

Any salvage or other recovery, except recovery under SUBROGATION or under OTHER INSURANCE, will accrue entirely to the benefit of the Company until the sum paid by the Company is recovered.

10. **SETTLEMENT OF CLAIMS**

The amount of loss, except as respects ACCOUNTS RECEIVABLE, for which the Company may be liable, will be paid within thirty (30) consecutive calendar days after:

    a.    proof of loss as described under REQUIREMENTS IN CASE OF LOSS is accepted by the Company; and

    b.    when a resolution of the amount of loss is made either by:

        (1)    agreement between the Insured and the Company; or

        (2)    the filing with the Company of an award as provided under APPRAISAL.

**Allianz ⑪**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

11.   **SUBROGATION**

In the event of any payment made under this "policy":

a.      the Company will be subrogated to all of the Insured's rights of recovery against any person or organization; and

b.      the Insured will execute and deliver instruments and papers and do whatever is necessary to secure such rights.

The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this "policy".

The Insured will do nothing after a loss to prejudice the subrogation rights of the Company.

The Insured will cooperate with the Company and upon the Company's request and expense:

(1)      attend hearings and trials; and

(2)      assist in:

(a)      effecting settlements;

(b)      securing and giving evidence;

(c)      obtaining the attendance of witnesses; and

(d)      conducting suits.

If there is recovery, the net amount recovered will be divided on a pro rata basis between the Company and the Insured.  The Company will have the sole right to settle any subrogation claim.

12.   **SUIT AGAINST THE COMPANY**

No suit, action or proceeding for the recovery of any claim under this "policy" will be sustainable in any court of law or equity unless:

a.      the Insured has fully complied with all the provisions of this "policy"; and

b.      such suit, action or proceeding is started within twelve (12) consecutive calendar months after date of the loss.

If such time limitation in b. above is invalid under the insurance laws of the jurisdiction:

(1)      where the destroyed or damaged Insured Property is situated; or

(2)      in the case of a TIME ELEMENT only loss, where the Insured Location(s) incurring such TIME ELEMENT loss is situated;

then any such legal action must be started within the shortest limit of time permitted by such laws.

D.   **VALUATION**

Adjustment of the loss amount for physical loss or damage not otherwise excluded by this "policy" will be computed as of the date of loss at the Insured Location(s) where such physical loss or damage occurred, and for no more than the interest of the Insured, subject to the following:

1.      On stock in process:

a.      the replacement cost of raw materials;

b.      the cost of labor expended; and

c.      the proper proportion of overhead charges.


**Allianz (III)**
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

2.   On finished goods manufactured by the Insured:

   a.   as respects Insured Location(s) where GROSS PROFITS applies, the replacement cost.

   b.   as respects all other Insured Location(s), the regular cash selling price at the Insured Location(s) where the physical loss or damage occurred, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage occurred.

3.   On raw materials, supplies and other merchandise not manufactured by the Insured:

   a.   if repaired or replaced, the actual expenditure incurred in repairing or replacing the destroyed or damaged property.

   b.   if not repaired or replaced, the "actual cash value" of such property.

4.   On motor vehicles not manufactured by the Insured, the least of the following:

   a.   the repair cost;

   b.   the replacement cost; or

   c.   the "actual cash value".

5.   On "media":

   a.   if repaired or replaced within two (2) consecutive calendar years from the date of loss or damage:

      (1)   the replacement cost of the "media" blank; plus

      (2)   the cost of copying the "electronic data" from back-ups or from originals of a previous generation;

   b.   if not repaired or replaced within two (2) consecutive calendar years from the date of loss or damage:  the replacement cost of the "media" blank;

excluding all other costs, such as the cost for research, engineering, programming, or assembling or gathering information, incurred in restoring or recreating the "electronic data" lost.

6.   On exposed films, records, manuscripts, and drawings, that are not "valuable papers and records":

   a.   their replacement cost blank; plus

   b.   the cost of copying information from back-ups or from originals of a previous generation;

excluding all other costs, such as the cost for research or engineering, incurred in restoring or recreating the information lost.

7.   On "valuable papers and records", the least of the following:

   a.   the reasonable and necessary costs to repair or restore to the physical condition that existed immediately prior to the physical loss or damage;

   b.   the replacement cost;

   c.   the amount designated, if any, for such "valuable papers and records" on the latest schedule submitted to and accepted by the Company.

8.   On "fine arts", the least of the following:

   a.   the reasonable and necessary costs to repair or restore to the physical condition that existed immediately prior to the physical of loss or damage;

   b.   the replacement cost;



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

    c.    the amount designated, if any, for such "fine arts" on the latest schedule submitted to and accepted by the Company.

In the event a "fine arts" article is part of a pair or set, and such article, if physically damaged, cannot be repaired or replaced or restored to the physical condition that existed immediately prior to the physical loss or damage, the amount recoverable under this "policy" will be limited to the lesser of the following:

    (1)    the full value of the pair or set; or

    (2)    the amount designated, if any, for such "fine arts" pair or set on the latest schedule submitted to and accepted by the Company.

The Insured agrees to surrender the pair or set to the Company.

9.    On property covered under TRANSPORTATION:

    a.    As respects property shipped to or for the account of the Insured, the actual invoice to the Insured including accrued costs and charges legally due to the Insured.  Such charges may include the Insured's commission as a selling agent.

    b.    As respects property sold by the Insured and shipped to or for the purchaser's account, the Insured's selling invoice amount including prepaid or advanced freight costs.

    c.    As respects property not under invoice:

    (1)    for property of the Insured, based on the VALUATION provisions applying to the "location" from which the property is being transported;

    (2)    for other property, the "actual cash value" at the destination point on the date of the "occurrence";

less any charges saved which would have become due and payable upon arrival at destination.

10.    On buildings and structures, building equipment, plant equipment, machinery, machine parts, office furniture, office equipment, tools, dies, jigs, templates, patterns and flasks, except all such property that is obsolete or useless to the Insured:

    a.    if repaired, rebuilt or replaced, at the same or at another site, within two (2) consecutive calendar years from the date of loss or damage, the lesser of the following:

    (1)    the cost to repair, rebuild or replace on the same site, with new materials of like kind and quality, whichever is the least;

    (2)    the actual expenditure incurred by or on behalf of the Insured in repairing, rebuilding or replacing on the same or another site, whichever is the least;

but in no event to include any increased costs resulting from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of property at Insured Location(s);

    b.    if not repaired, rebuilt or replaced, at the same or another site, within two (2) consecutive calendar years from the date of loss or damage:  the "actual cash value" at the time and place of loss.


**Allianz** Ⓐ
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

11.  On improvements and betterments:

a.  if repaired or replaced at the expense of the Insured within two (2) consecutive calendar years from the date of loss or damage, the lesser of the following:

(1)  the cost to repair or replace the lost or damaged improvements and betterments with new materials of like kind or quality, whichever is less;

(2)  the actual expenditure incurred in repairing or replacing the lost or damaged improvements and betterments, whichever is less;

b.  if not repaired or replaced within two (2) consecutive calendar years after such loss or damage: that proportion of the original cost at the time of installation of the lost or damaged improvements and betterments which the unexpired term of the lease at the time of loss bears to the period from the date such improvements and betterments were made to the expiration date of the lease;

c.  if repaired or replaced at the expense of others for the use of the Insured, there shall be no liability hereunder.

12.  On unrepairable electrical or mechanical equipment, including computer equipment: the cost to replace such damaged or destroyed property with the most functionally equivalent equipment even if such equipment:

a.  has technological advantages;

b.  represents an improvement in function; or

c.  forms part of a program or system enhancement.

13.  On property scheduled for demolition at the time of the loss or damage: the increased cost of demolition, if any, resulting from physical loss or damage not otherwise excluded by this "policy".

14.  On real property or machinery and equipment, other than stock, held for sale at the time of the loss or damage: the selling price.

15.  On personal property of others for which the Insured is legally liable in the event of loss or damage: the amount for which the Insured is legally liable, but not to exceed the "actual cash value" of such property.

16.  On all other property, including property that is obsolete or useless to the Insured: the "actual cash value".

The Insured may elect not to repair or replace the real and personal property lost, destroyed or damaged. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two (2) consecutive calendar years from the date of physical loss or damage. As a condition of collecting herein, such expenditure must be unplanned as of the date of physical loss or damage and must be made at an Insured Location(s) under this "policy". This does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION.


**Allianz** ⑪
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

## SECTION VI.    GENERAL CONDITIONS

A.   **ADDITIONAL INSURABLE INTERESTS**

Additional insured interests are automatically added to this "policy" as their interests may appear when named as additional named insured, lender, mortgagee or loss payee in the Certificates of Insurance on file with the Company.  Such interests become effective on the dates shown in such certificates but do not further amend or extend the terms, conditions, provisions and limitations of this "policy".

B.   **INCEPTION AND EXPIRATION TIME**

1.   For Insured Property situated in the following states of the United States, the inception and expiration time of coverage under this "policy" is 12 noon standard time at the Insured Location(s) where such Insured Property is situated:

a.   Arizona;

b.   Connecticut;

c.   Hawaii;

d.   Iowa;

e.   Missouri;

f.   Nebraska;

g.   New Hampshire;

h.   New York;

i.   North Carolina;

j.   North Dakota;

k.   Oklahoma;

l.   Pennsylvania; and

m.   West Virginia.

2.   For Insured Property situated in all other states of the United States and in the District of Columbia, the inception and expiration time of coverage under this "policy" is 12:01 A.M. standard time at the Insured Location(s) where such Insured Property is situated.

Nevertheless, to the extent that coverage under this "policy" replaces coverage under other policies terminating at 12 noon standard time on the Policy Inception Date, coverage under this "policy" becomes effective when such other coverage terminates.  In this respect, the expiration time of coverage under this "policy" is amended to 12 noon standard time on the Policy Expiration Date at the Insured Location(s) where such Insured Property is situated.

3.   For Insured Property situated outside the fifty (50) states of the United States and the District of Columbia, the inception and expiration time of coverage under this "policy" is 12:01 A.M. standard time at the Insured Location(s) where such Insured Property is situated.



**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

Nevertheless, to the extent that coverage under this "policy" replaces coverage under other policies not terminating on the Policy Inception Date at 12:01 A.M. standard time at the Insured Location(s) where Insured Property is situated, coverage under this "policy" becomes effective on the Policy Inception Date when such other coverage terminates. In this respect, the expiration time of coverage under this "policy" is amended from 12:01 A.M. standard time to the expiration time of such other coverage being replaced, on the Policy Expiration Date, at the Insured Location(s) where such Insured Property is situated.

C.   **INSPECTIONS**

1.   The Company, at all reasonable times, will be permitted, but will not have the duty, to inspect Insured Property.

2.   The Company's:

a.   right to make inspections;

b.   making of inspections; or

c.   analysis, advice or inspection report;

does not constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that the Insured Property is safe or healthful.

3.   The Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

4.   When the Company is not providing jurisdictional inspections, the owner or operator has the responsibility to ensure that:

a.   jurisdictional inspections are performed as required by law; and

b.   the required jurisdictional operating certificates are current;

as respects their pressure equipment.

D.   **LIBERALIZATION**

If any filed rules or regulations in the fifty (50) states of the United States and the District of Columbia affecting this "policy" are amended by statute during the Policy Period so as to broaden the coverage without additional premium charge, such extended or broadened coverage will inure to the benefit of the Insured within such jurisdiction, effective on the date of the amendment specified in such statute.

E.   **MISREPRESENTATION AND FRAUD**

This "policy" is void if, whether before or after the loss, the Insured has:

1.   willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured;

2.   made any attempt to defraud the Company; or

3.   made any false swearing.

F.   **OTHER INSURANCE**

1.   If there is any other insurance that would apply in the absence of this "policy", then this "policy" will apply only after such insurance, whether collectible or not.

2.   In no event will this "policy" apply as contributing insurance.


**Allianz** **Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

3.    The Insured is permitted to have other insurance over the Program Limits Of Liability without prejudice to this "policy". The existence of any such insurance will not reduce such Program Limits Of Liability.

4.    Any other insurance that would have provided primary coverage in the absence of this "policy" will not be considered excess.

5.    The Insured is permitted to have other insurance for all or any part of the Policy Deductible in this "policy". The existence of such other insurance will not prejudice recovery under this "policy".

     If the limits of liability of such other insurance are greater than the applicable Policy Deductible, then the insurance under this "policy" will apply only after the limits of liability of such other insurance have been exhausted.

6.    In the event this "policy" is deemed to contribute with other insurance, the maximum amount of contribution under this "policy" for each "occurrence" will not exceed the least of the following:

    a.    the latest Program Limit;

    b.    the latest Program Sublimit applicable;

    c.    the value declared for the "location" affected by the loss in the latest schedule submitted to and accepted by the Company

    immediately prior to the loss or damage.

7.    When this "policy" covers Insured Property in more than one jurisdiction, "local underlyers" may be issued to comply with jurisdictional requirements. Such policies are not considered as additional insurance but as duplicate insurance only.

**G.    POLICY MODIFICATION**

This "policy" contains all of the agreements between the Insured and the Company concerning this insurance. The Insured or the Company may request changes to this "policy".

This "policy" can be changed only by endorsements issued by the Company and made part of this "policy".

Except as otherwise provided under item H. of SECTION IV. PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS, notice to any agent or knowledge possessed by any agent or by any other person, does not:

1.    create a waiver or change any part of this "policy"; or

2.    prevent the Company from asserting any rights under the provisions of this "policy".

**H.    REDUCTION BY LOSS**

Claims paid under this "policy" do not reduce the Program Limits Of Liability, except for those expressed as Term Aggregates.

**I.    TITLES OF PARAGRAPHS**

The titles of paragraphs in this "policy" are for reference only. The titles do not in any way affect the provisions of this "policy".


**Allianz** (ⓘ)
Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

## SECTION VII.   DEFINITIONS

The following definitions apply wherever the defined terms appear in quotation marks:

A.   **"Actual Cash Value"**

The term "actual cash value" means the amount it would cost to repair or replace Insured Property on the date of the physical loss or damage with material of like kind and quality and with proper deduction for obsolescence and physical depreciation.

B.   **"Contaminants"**

The term "contaminants" means materials that may be harmful to human health. "Contaminants" include any impurity, pollutant, poison, toxin, pathogen or pathogenic organism, disease-causing or illness-causing agent, asbestos, dioxin, polychlorinated biphenyls, agricultural smoke, agricultural soot, vapor, fumes, acids, alkalis, bacteria, virus, and hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, Toxic Substances Control Act, or as designated by the United States Environmental Protection Agency or any other local governmental agency.

However, "contaminants" do not include "fungi".

C.   **"Electronic Data"**

The term "electronic data" means data of any kind including, but not limited to, facts, concepts, or other information in a form useable by computers or other electronic or electromagnetic data processing equipment.

"Electronic data" includes computer software and all other coded instructions for the processing or manipulation of data on any equipment.

D.   **"Local Underlyer", "Local Underlyers", "Coordinated Local Policy", "Coordinated Local Policies", "Declared Local Policy" and "Declared Local Policies"**

1.   The term "local underlyer" means a "coordinated local policy" or a "declared local policy".

The term "local underlyers" means more than one "local underlyer".

2.   The term "coordinated local policy" means a locally-admitted property insurance policy which is issued by a subsidiary, affiliate or cooperation partner of Allianz Global Risks US Insurance Company in coordination with Allianz Global Risks US Insurance Company.

The term "coordinated local policies" means more than one "coordinated local policy".

3.   The term "declared local policy" means a locally-admitted property insurance policy which:

a.   covers the Insured's interests at Insured Location(s) outside the 50 states of the United States and the District of Columbia;

b.   is issued:

(1)   by a subsidiary, affiliate or cooperation partner of Allianz Global Risks US Insurance Company; or

(2)   by any other insurance company; and

c.   is declared to, but not coordinated with, Allianz Global Risks US Insurance Company.

A locally-admitted property insurance policy issued in the United States by a co-insurer of Allianz Global Risks US Insurance Company is not a "declared local policy".


**Global Risks**

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

The term "declared local policies" means more than one "declared local policy".

E.    **"Location" and "Locations"**

The term "location" means a building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded by public streets, clear land space, open waterways or any combination thereof, with each public street, clear land space or open waterway measuring no less than fifty (50) feet wide.  Any bridge or tunnel crossing such streets, space or waterways renders such separation inoperative.

The term "locations" means more than one "location".

F.    **"Media"**

The term "media" means the materials upon which data is recorded, including but not limited to, paper tapes, cards, electronic memory circuits and magnetic or optical storage devices.

G.    **"Money"**

The term "money" means bank notes, coins, currency, money order held for sale to the public, traveler's checks or register checks.

H.    **"Occurrence"**

The term "occurrence" means any loss, disaster or casualty, or series of losses, disasters or casualties arising out of one event.  When the word applies to loss or losses from the perils of tornado, windstorm, "named windstorm", hail, riot, riot attending a strike, civil commotion, malicious mischief, "flood" or "earth movement", if such perils are covered by this "policy", one event will be construed to be all losses arising during a continuous period of seventy-two (72) hours.

When filing a proof of loss, the Insured may elect the moment at which such seventy-two (72) hour period is deemed to have commenced, which will not be earlier than when the first loss to property or interests insured by this "policy" occurs.

However, the Company is not liable hereunder for any loss or damage:

1.    occurring before the "policy" becomes effective; or

2.    arising from an "occurrence" which is in progress at the time this "policy" becomes effective, even if such loss or damage occurs after this "policy" becomes effective; or

3.    occurring after the expiration of this "policy", except loss or damage arising from an "occurrence" in progress at the time this "policy" expires.

I.    **"Ordinary Payroll"**

The term "Ordinary Payroll" means the entire payroll expenses for employees of the Insured except the following:

1.    Officers;

2.    Executives;

3.    Department managers;

4.    Employees under contract whose services must necessarily continue; and

5.    Other important employees.

Such expenses include the following:

a.    Payroll;

b.    Taxes and charges dependent on the payment of wages;


Global Risks

**Nomura Holdings America Inc., Instinet Incorporated**
**Policy No. CLP 3012948**

  c.  Employee benefits, if directly related to payroll;

  d.  FICA payments made by the Insured;

  e.  Union dues paid by the Insured; and

  f.  Premiums for Workers Compensation.

J.  **"Policy"**

The term "policy" means all sections of this document, the Commercial Lines Policy Jacket, the Common Policy Declarations, and the appendices and endorsements attached or added to this document.

K.  **"Precious Metals"**

The term "precious metals" means any of the following metals:

1.  gold;

2.  iridium;

3.  osmium;

4.  palladium;

5.  platinum;

6.  rhodium;

7.  ruthenium; and

8.  silver.

L.  **"Securities"**

The term "securities" means all negotiable and non-negotiable instruments or contracts representing either "money" or other property.

"Securities" include accounts, bills, food stamps, other evidences of debt or revenue, other stamps in current use, tokens, tickets, evidences of title and letter of credit.

"Securities" do not include "money".



**Allianz**
Global Risks

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Appendix** |
| **Effective Date:** | **December 08, 2011** | **A** |

## CRITICAL NON-US EARTH MOVEMENT AREAS DEFINITION

The term "Critical Non-US Earth Movement Areas" wherever used in this "policy" means any one or more of the following:

1. All islands in the Caribbean Sea.
2. All islands in the South Pacific Ocean, including but not limited to Micronesia, Polynesia, Melanesia, Fiji, Vanuatu and the Solomon Islands.
3. Algeria.
4. Argentina - the provinces of:
   a. La Rioja;
   b. Mendoza;
   c. San Juan.
5. Australia - the states of:
   a. Western Australia;
   b. South Australia.
6. Azerbaijan.
7. Azores Autonomous Region.
8. Bangladesh.
9. Bhutan.
10. Bolivia - the departments of:
    a. La Paz;
    b. Oruro;
    c. Potosi;
    d. Tarija.
11. Bulgaria - Sofiya City and the provinces of:
    a. Blagoevgrad;
    b. Kyustendil;
    c. Plovdiv;
    d. Sofia;
    e. Stara Zagora;
    f. Veliko Tarnovo;
12. Burundi.
13. Canada - the provinces of:
    a. British Columbia;
    b. New Brunswick;
    c. Quebec.
14. Canary Islands.
15. Chile.
16. China -
    the provinces of (postal map spelling):
    a. Gansu (Kansu);
    b. Hainan (Hainan);
    c. Hebei (Hopeh);
    d. Henan (Honan);
    e. Jiangsu (Kiangsu);
    f. Qinghai (Tsinghai);
    g. Shaanxi (Shensi);
    h. Shanxi (Shansi);

    i. Shandong (Shantung);
    j. Sichuan (Szechuan);
    k. Yunnan (Yunnan);
the autonomous regions of:
    l. Xinjiang Uyghur;
    m. Tibet;
and the municipilaties of:
    n. Chongqing;
    o. Beijing;
    p. Tianjin.
17. Colombia.
18. Costa Rica.
19. Cyprus.
20. Djibouti.
21. Ecuador.
22. Egypt.
23. El Salvador.
24. Eritrea.
25. Ethiopia.
26. Georgia.
27. Greece.
28. Guatemala.
29. Honduras.
30. Iceland.
31. India, <u>except</u> the following states:
    a. Andhra Pradesh;
    b. Chhattisgarh;
    c. Gujarat;
    d. Karnataka;
    e. Kerala;
    f. Madhya Pradesh;
    g. Maharashtra;
    h. Orissa;
    i. Rajasthan;
    j. Tamil Nadu.
32. Indonesia.
33. Israel.



**Allianz ⑪**
Global Risks

Policy No. CLP 3012948 | Appendix A
**CRITICAL NON-US EARTH MOVEMENT AREAS DEFINITION**

| | |
|---|---|
| 34. Italy - the regions of: | 48. Nicaragua. |
|   a. Abruzzo; | 49. Pakistan. |
|   b. Apulia; | 50. Palestine. |
|   c. Basilicata; | 51. Panama. |
|   d. Calabria; | 52. Papua New Guinea. |
|   e. Campania; | 53. Peru. |
|   f. Friuli-Venezia Giulia; | 54. Philippines. |
|   g. Lazio; | 55. Portugal. |
|   h. Marche; | 56. Romania - the counties of: |
|   i. Molise; |   a. Bacau; |
|   j. Sicily; |   b. Buzau; |
|   k. Umbria. |   c. Galati; |
| 35. Japan. |   d. Prahova; |
| 36. Jordan. |   e. Vaslui; |
| 37. Kazakhstan. |   f. Vrancea. |
| 38. Kenya. | 57. South Africa. |
| 39. Kyrgyzstan. | 58. Taiwan. |
| 40. Madeira Autonomous Region. | 59. Tajikistan. |
| 41. Malawi. | 60. Tanzania. |
| 42. Mexico - Mexico City (Federal District) and | 61. Tunisia. |
|   the states of: | 62. Turkey. |
|   a. Baja California; | 63. Turkmenistan. |
|   b. Baja California Sur; | 64. Uganda. |
|   c. Chiapas; | 65. United Arab Emirates. |
|   d. Colima; | 66. Uzbekistan. |
|   e. Guerrero; | 67. Venezuela - the Federal Dependencies and |
|   f. Jalisco; |   the states of: |
|   g. Mexico; |   a. Aragua; |
|   h. Michoacan; |   b. Barinas; |
|   i. Morelos; |   c. Carabobo; |
|   j. Nayarit; |   d. Merida; |
|   k. Oaxaca; |   e. Miranda; |
|   l. Puebla; |   f. Cojedes; |
|   m. Sinaloa; |   g. Nueva Esparta; |
|   n. Sonora; |   h. Portuguesa; |
|   o. Veracruz. |   i. Sucre; |
| 43. Mongolia. |   j. Tachira; |
| 44. Morocco. |   k. Trujillo; |
| 45. Mozambique. |   l. Yaracuy; |
| 46. Nepal. |   m. Lara; |
| 47. New Zealand. |   n. Vargas; |
| | 68. Zimbabwe. |


**Allianz**
**Global Risks**

| Policy No.: | CLP 3012948 | Appendix |
| Effective Date: | December 08, 2011 | B |

# CRITICAL WORLDWIDE NAMED WINDSTORM AREAS DEFINITIONS

A.  The term "Critical US Named Windstorm Areas" wherever used in this "policy" means the following:

1.  The entire territory of the United States Virgin Islands.

2.  The entire Commonwealth of Puerto Rico.

3.  The entire State of Florida in the United States.

4.  The entire State of Hawaii in the United States.

5.  In the State of Alabama, United States, the counties of:
    a.  Baldwin; and
    b.  Mobile.

6.  In the State of Georgia, United States, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Brantley; | e. | Chatham; | i. | Long; |
| b. | Bryan; | f. | Effingham; | j. | McIntosh; and |
| c. | Camden; | g. | Glynn; | k. | Wayne. |
| d. | Charlton; | h. | Liberty; | | |

7.  In the State of Louisiana, United States, the parishes of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Acadia; | k. | Lafayette; | u. | St. Mary; |
| b. | Ascension; | l. | Lafourche; | v. | St. Tammany; |
| c. | Assumption; | m. | Livingston; | w. | Tangipahoa; |
| d. | Calcasieu; | n. | Orleans; | x. | Terrebonne; |
| e. | Cameron; | o. | Plaquemines; | y. | Vermilion; |
| f. | East Baton Rouge; | p. | St. Bernard; | z. | Washington; and |
| g. | Iberia; | q. | St. Charles; | aa. | West Baton |
| h. | Iberville; | r. | St. James; | | Rouge. |
| i. | Jefferson; | s. | St. John the Baptist; | | |
| j. | Jefferson Davis; | t. | St. Martin; | | |

8.  In the State of Mississippi, United States, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| a. | George; | c. | Harrison; | e. | Pearl River; and |
| b. | Hancock; | d. | Jackson; | f. | Stone. |

9.  In the State of North Carolina, United States, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Beaufort; | j. | Currituck; | s. | New Hanover; |
| b. | Bertie; | k. | Dare; | t. | Onslow; |
| c. | Bladen; | l. | Duplin; | u. | Pamlico; |
| d. | Brunswick; | m. | Gates; | v. | Pasquotank; |
| e. | Camden; | n. | Hertford; | w. | Pender; |
| f. | Carteret; | o. | Hyde; | x. | Perquimans; |
| g. | Chowan; | p. | Jones; | y. | Pitt; |
| h. | Columbus; | q. | Lenoir; | z. | Tyrrell; and |
| i. | Craven; | r. | Martin; | aa. | Washington. |

10. In the State of South Carolina, United States, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Beaufort; | e. | Dorchester; | i. | Horry; |
| b. | Berkeley; | f. | Florence; | j. | Jasper; |
| c. | Charleston; | g. | Georgetown; | k. | Marion; and |
| d. | Colleton; | h. | Hampton; | l. | Williamsburg. |



**Policy No. CLP 3012948 | Appendix B**
**CRITICAL WORLDWIDE NAMED WINDSTORM AREAS DEFINITIONS**

11.  In the State of Texas, United States, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Aransas; | k. | Hardin; | u. | Matagorda; |
| b. | Bee; | l. | Harris; | v. | Newton; |
| c. | Brazoria; | m. | Hidalgo; | w. | Nueces; |
| d. | Brooks; | n. | Jackson; | x. | Orange; |
| e. | Calhoun; | o. | Jasper; | y. | Refugio; |
| f. | Cameron; | p. | Jefferson; | z. | San Patricio; |
| g. | Chambers; | q. | Jim Wells; | aa. | Victoria; |
| h. | Fort Bend; | r. | Kenedy; | bb. | Wharton; and |
| i. | Galveston; | s. | Kleberg; | cc. | Willacy. |
| j. | Goliad; | t. | Liberty; | | |

12.  In the State of Virginia, United States:

The counties of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Accomack; | e. | Lancaster; | i. | Northumberland; |
| b. | Gloucester; | f. | Mathews; | | and |
| c. | Isle of Wight; | g. | Middlesex; | j. | York. |
| d. | James City; | h. | Northampton; | | |

The independent cities of:

| | | | | | |
|---|---|---|---|---|---|
| k. | Chesapeake; | n. | Norfolk; | q. | Suffolk; |
| l. | Hampton; | o. | Poquoson; | r. | Virginia Beach; and |
| m. | Newport News; | p. | Portsmouth; | s. | Williamsburg. |

B.  The term "Critical Non-US Named Windstorm Areas" wherever used in this "policy" means the following:

1.  In Mexico, the States of:

| | | | | | |
|---|---|---|---|---|---|
| a. | Tamaulipas; | g. | Baja California; | m. | Colima; |
| b. | Veracruz; | h. | Baja California Sur; | n. | Michoacán; |
| c. | Tabasco; | i. | Sonora; | o. | Guerrero; |
| d. | Campeche; | j. | Sinaloa; | p. | Oaxaca; and |
| e. | Yucatán; | k. | Nayarit; | q. | Chiapas. |
| f. | Quintana Roo; | l. | Jalisco; | | |

2.  In Australia:

a.  State of Western Australia;
b.  State of Queensland; and
c.  Northern Territory (federal territory).

3.  In China:

The Provinces of (postal map spelling in brackets):

| | | | | | |
|---|---|---|---|---|---|
| a. | Heilongjiang (Heilungkiang); | e. | Shandong (Shantung); | i. | Guangdong (Kwangtung); and |
| b. | Jilin (Kirin); | f. | Jiangsu (Kiangsu); | j. | Hainan (Hainan). |
| c. | Liaoning (Fengtien); | g. | Zhejiang (Chekiang); | | |
| d. | Hebei (Hopeh); | h. | Fujian (Fukien); | | |

The Municipalities of:

k.  Tianjin; and
l.  Shanghai.


**Allianz** Ⓘ
Global Risks

**Policy No. CLP 3012948 | Appendix B**
**CRITICAL WORLDWIDE NAMED WINDSTORM AREAS DEFINITIONS**

The Special Administrative Regions of:
m.   Hong Kong; and
n.   Macau.

4.   In India, the States of:
a.   West Bengal;      c.   Andhra Pradesh;      e.   Gujarat.
b.   Orissa;           d.   Tamil Nadu; and

5.   All Islands in the South Pacific Ocean.

6.   Azores (autonomous region of Portugal).

7.   Bangladesh.

8.   Belize.

9.   Caribbean Islands, except the Commonwealth of Puerto Rico and the United States Virgin Islands.

10.  Bermuda.

11.  Costa Rica.

12.  El Salvador.

13.  Guam.

14.  Guatemala.

15.  Honduras.

16.  Japan.

17.  Madagascar.

18.  Maldives, The.

19.  Mauritius.

20.  Mozambique.

21.  New Zealand.

22.  Nicaragua.

23.  Northern Mariana Islands, The.

24.  Oman.

25.  Philippines, The.

26.  Seychelles.

27.  Somalia.

28.  South Korea.

29.  Sri Lanka.

30.  Réunion (overseas department of France).

31.  Taiwan.

32.  Thailand.

33.  Vietnam.



**Allianz** ⑪
**Global Risks**

| | | | **Appendix** |
|---|---|---|---|
| **Policy No.:** | **CLP 3012948** | | **C** |
| **Effective Date:** | **December 08, 2011** | | |

## NEW MADRID SEISMIC ZONE DEFINITION

The term "New Madrid Seismic Zone" wherever used in this "policy" means the following, all in the United States:

A.    In the State of Alabama, the counties of:
1.    Colbert;
2.    Franklin; and
3.    Lauderdale.

B.    In the State of Arkansas, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Arkansas; | 13. | Fulton; | 25. | Monroe; |
| 2. | Ashley; | 14. | Grant; | 26. | Phillips; |
| 3. | Chicot; | 15. | Greene; | 27. | Poinsett; |
| 4. | Clay; | 16. | Independence; | 28. | Prairie; |
| 5. | Cleburne; | 17. | Izard; | 29. | Pulaski; |
| 6. | Cleveland; | 18. | Jackson; | 30. | Randolph; |
| 7. | Craighead; | 19. | Jefferson; | 31. | Saline; |
| 8. | Crittenden; | 20. | Lawrence; | 32. | Sharp; |
| 9. | Cross; | 21. | Lee; | 33. | St. Francis; |
| 10. | Desha; | 22. | Lincoln; | 34. | Stone; |
| 11. | Drew; | 23. | Lonoke; | 35. | White; and |
| 12. | Faulkner; | 24. | Mississippi; | 36. | Woodruff. |

C.    In the State of Illinois, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Alexander; | 11. | Jersey; | 21. | Randolph; |
| 2. | Calhoun; | 12. | Johnson; | 22. | Richland; |
| 3. | Crawford; | 13. | Lawrence; | 23. | Saline; |
| 4. | Edwards; | 14. | Massac; | 24. | St. Clair; |
| 5. | Franklin; | 15. | Madison; | 25. | Union; |
| 6. | Gallatin; | 16. | Monroe; | 26. | Wabash; |
| 7. | Hamilton; | 17. | Perry; | 27. | Washington; |
| 8. | Hardin; | 18. | Pike; | 28. | Wayne; |
| 9. | Jackson; | 19. | Pope; | 29. | White; and |
| 10. | Jefferson; | 20. | Pulaski; | 30. | Williamson. |

D.    In the State of Indiana, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Brown; | 8. | Knox; | 15. | Rush; |
| 2. | Clay; | 9. | Martin; | 16. | Shelby; |
| 3. | Daviess; | 10. | Monroe; | 17. | Sullivan; |
| 4. | Fayette; | 11. | Morgan; | 18. | Union; and |
| 5. | Gibson; | 12. | Owen; | 19. | Vanderburgh. |
| 6. | Greene; | 13. | Pike; | | |
| 7. | Johnson; | 14. | Posey; | | |

E.    In the State of Iowa, the counties of:
1.    Appanoose;
2.    Davis;
3.    Van Buren; and
4.    Wapello.



**Policy No. CLP 3012948 | Appendix C**
**NEW MADRID SEISMIC ZONE DEFINITION**

F.   In the State of Kentucky, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Ballard; | 10. | Graves; | 19. | McCracken; |
| 2. | Butler; | 11. | Hancock; | 20. | McLean; |
| 3. | Caldwell; | 12. | Henderson; | 21. | Muhlenberg; |
| 4. | Calloway; | 13. | Hickman; | 22. | Ohio; |
| 5. | Carlisle; | 14. | Hopkins; | 23. | Todd; |
| 6. | Christian; | 15. | Livingston; | 24. | Trigg; |
| 7. | Crittenden; | 16. | Logan; | 25. | Union; and |
| 8. | Daviess; | 17. | Lyon; | 26. | Webster. |
| 9. | Fulton; | 18. | Marshall; | | |

G.   In the State of Mississippi, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Alcorn; | 11. | Itawamba; | 21. | Sunflower; |
| 2. | Benton; | 12. | Lafayette; | 22. | Tallahatchie; |
| 3. | Bolivar; | 13. | Lee; | 23. | Tate; |
| 4. | Carroll; | 14. | Leflore; | 24. | Tippah; |
| 5. | Coahoma; | 15. | Marshall; | 25. | Tishomingo; |
| 6. | DeSoto; | 16. | Panola; | 26. | Tunica; |
| 7. | Grenada; | 17. | Pontotoc; | 27. | Union; |
| 8. | Holmes; | 18. | Prentiss; | 28. | Washington; and |
| 9. | Humphreys; | 19. | Quitman; | 29. | Yalobusha. |
| 10. | Issaquena; | 20. | Sharkey; | | |

H.   In the State of Missouri, the Independent City of St. Louis and the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Adair; | 16. | Knox; | 32. | Ralls; |
| 2. | Audrain; | 17. | Lewis; | 33. | Randolph; |
| 3. | Bollinger; | 18. | Lincoln; | 34. | Reynolds; |
| 4. | Boone; | 19. | Macon; | 35. | Ripley; |
| 5. | Butler; | 20. | Madison; | 36. | Schuyler; |
| 6. | Callaway; | 21. | Marion; | 37. | Scotland; |
| 7. | Cape | 22. | Mississippi; | 38. | Scott; |
| | Girardeau; | 23. | Monroe; | 39. | Shelby; |
| 8. | Carter; | 24. | Montgomery; | 40. | St. Charles; |
| 9. | Chariton; | 25. | New Madrid; | 41. | St. Francois; |
| 10. | Clark; | 26. | Oregon; | 42. | St. Louis; |
| 11. | Cole; | 27. | Osage; | 43. | Ste. Genevieve; |
| 12. | Dunklin; | 28. | Pemiscot; | 44. | Stoddard; |
| 13. | Howell; | 29. | Perry; | 45. | Warren; |
| 14. | Iron; | 30. | Pike; | 46. | Washington; and |
| 15. | Jefferson; | 31. | Putnam; | 47. | Wayne. |

I.   In the State of Tennessee, the counties of:

| | | | | | |
|---|---|---|---|---|---|
| 1. | Benton; | 12. | Hardin; | 23. | Madison; |
| 2. | Carroll; | 13. | Haywood; | 24. | McNairy; |
| 3. | Cheatham; | 14. | Henderson; | 25. | Montgomery; |
| 4. | Chester; | 15. | Henry; | 26. | Obion; |
| 5. | Crockett; | 16. | Hickman; | 27. | Perry; |
| 6. | Decatur; | 17. | Houston; | 28. | Robertson; |
| 7. | Dickson; | 18. | Humphreys; | 29. | Shelby; |
| 8. | Dyer; | 19. | Lake; | 30. | Stewart; |
| 9. | Fayette; | 20. | Lauderdale; | 31. | Tipton; |
| 10. | Gibson; | 21. | Lawrence; | 32. | Wayne; and |
| 11. | Hardeman; | 22. | Lewis; | 33. | Weakley. |



**Allianz** ⑪
**Global Risks**

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Appendix** |
| **Effective Date:** | **December 08, 2011** | **D** |

## PACIFIC NORTHWEST SEISMIC ZONE DEFINITION

The term "Pacific Northwest Seismic Zone" wherever used in this "policy" means the following, all in the United States:

A.  In the State of Oregon, the counties of:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | Benton; | 7. | Douglas; | 13. | Marion; |
| 2. | Clackamas; | 8. | Jackson; | 14. | Multnomah; |
| 3. | Clatsop; | 9. | Josephine; | 15. | Polk; |
| 4. | Columbia; | 10. | Lane; | 16. | Tillamook; |
| 5. | Coos; | 11. | Lincoln; | 17. | Washington; and |
| 6. | Curry; | 12. | Linn; | 18. | Yamhill. |

B.  In the State of Washington, the counties of:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | Clallam; | 7. | King; | 14. | Skagit; |
| 2. | Clark; | 8. | Kitsap; | 15. | Skamania; |
| 3. | Cowlitz; | 9. | Lewis; | 16. | Snohomish; |
| 4. | Grays Harbor; | 10. | Mason; | 17. | Thurston; |
| | | 11. | Pacific; | 18. | Wahkiakum; and |
| 5. | Island; | 12. | Pierce; | 19. | Whatcom. |
| 6. | Jefferson; | 13. | San Juan; | | |



**Allianz 🏛**
**Global Risks**

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Endorsement No.** |
| **Policy Inception Date:** | **December 08, 2011** | **1** |

# NEW YORK CHANGES - CANCELLATION AND NONRENEWAL ENDORSEMENT

With effect from the Policy Inception Date, this policy is amended by the following conditions but only if such conditions are construed to be more liberal than those already stated in the policy:

A.  **CANCELLATION**

  1.  The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

  2.  Cancellation Of Policies In Effect

      a.  60 Days Or Less

          We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

          (1)  30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph 2.a.(2) below.

          (2)  15 days before the effective date of cancellation if we cancel for any of the following reasons:

              (a)  Nonpayment of premium;

              (b)  Conviction of a crime arising out of acts increasing the hazard insured against;

              (c)  Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

              (d)  After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

              (e)  Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

              (f)  Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

              (g)  A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Allianz ⑪**
Global Risks

(h)     Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

b.     **For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph 2.a.(2) above, provided:

(1)     We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

(2)     If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3.     We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

4.     Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.     If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

6.     If notice is mailed, proof of mailing will be sufficient proof of notice.

7.     If one of the reasons for cancellation in Paragraphs 2.a.(2) or C.2.b.(2) exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**B.     NONRENEWAL**

If we decide not to renew this policy, we will send notice as provided in Paragraph C.3. below.

1.     Conditional Renewal

If we conditionally renew this policy subject to a:

a.     Change of limits;

b.     Change in type of coverage;

c.     Reduction of coverage;

d.     Increased deductible;

e.     Addition of exclusion; or

f.     Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units, or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph C.3 below.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



2.   Notices Of Nonrenewal And Conditional Renewal

   a.   If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs C.1. and C.2. below, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

      (1)   The expiration date; or

      (2)   The anniversary date if this is a continuous policy.

   b.   Notice will be mailed or delivered to the first named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

   c.   Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

   d.   If we violate any of the provisions of Paragraphs B.2.a., b. or c. above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

      (1)   Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

      (2)   On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

   e.   If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

      (1)   Upon expiration of the 60 day period; or

      (2)   Notwithstanding the provisions in Paragraphs d.(1) and d.(2) above, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

   f.   We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

C.   **The following provisions apply when the Property Coverage Form is issued:**

   1.   Items C.2. and C.3 apply if this policy meets the following conditions:

     a.   The policy is issued or issued for delivery in New York State covering property located in this state; and

     b.   The policy insures:

      (1)   For loss or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

      (2)   For loss of or damage to personal property other than business property; or

      (3)   Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising out of business; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



    c.    The portion of the annual premium attributable to the property and contingencies described in 1.b. exceeds the portion applicable to other property and contingencies.

2.    **Procedure And Reasons For Cancellation**

    a.    We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1)    15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2)    30 days before the effective date of cancellation if we cancel for any other reason.

    b.    But if this policy:

        (1)    Has been in effect for more than 60 days; or

        (2)    Is a renewal of a policy we issued:

we may cancel this policy only for one or more of the following reasons:

    (a)    Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the insured of the amount due;

    (b)    Conviction of a crime arising out of acts increasing the risk of loss;

    (c)    Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

    (d)    Discovery of willful or reckless acts or omissions increasing the risk of loss;

    (e)    Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

        (i)    Issued the policy; or

        (ii)    Last voluntarily renewed the policy.

    (f)    The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

    (g)    Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3.    **The following are added:**

    a.    Conditional Continuation

        Instead of canceling this policy, we may continue it on the condition that:

        (1)    The policy limits can be changed; or

        (2)    Any coverage not required by law be eliminated.

        If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

    b.    Nonrenewal

        If, as allowed by the laws of New York State, we:

        (1)    Do not renew this policy; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.


**Allianz**
**Global Risks**

    (2)    Condition policy renewal upon:

        (a)    Change of limits; or

        (b)    Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

(i)    At least 45 days; but

(ii)    Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

D.    **The following provisions apply when the Property Coverage Form is issued:**

**CANCELLATION**

1.    If we cancel this policy, we will give written notice to the mortgageholder at least:

    a.    10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b.    30 days before the effective date of cancellation if we cancel for any other reason.

2.    If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgagehoder's interest only, cancellation will become effective on the later of:

    a.    The effective date of cancellation of the insured's coverage; or

    b.    10 days after we give notice to the mortgageholder.

**NONRENEWAL**

1.    If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

2.    If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

    a.    The expiration date of the policy; or

    b.    10 days after we give notice to the mortgageholder.

**DEFINITIONS**

Throughout this endorsement the words "you" and "your" refer to the first Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

All other terms and conditions remain unchanged.


**Allianz** ⑪
**Global Risks**

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Endorsement No.** |
| **Effective Date:** | **December 08, 2011** | **2** |

## MEDIA BROAD VALUATION ENDORSEMENT

This "policy" is amended as follows:

A.    Item 1.e. under PERIOD OF LIABILITY is deleted in its entirety and replaced by the following:

  e.  For "media", the period of time required:

   (1)  to copy from backups or from originals of a previous generation; or

   (2)  if no back-ups or originals of a previous generation exist:

      to research, engineer, program, assemble or gather information, or any other period of time necessary to restore or recreate the "electronic data" lost.

B.    Item 5 under VALUATION is deleted in its entirety and replaced by the following:

  5.  On "media":

   a.  if repaired or replaced within two (2) years from the date of loss, the cost of such "media" blank and:

    (1)  the cost of copying the "electronic data" from back-ups or from originals of a previous generation; or

    (2)  if no back-ups or originals of a previous generation exist, all reasonable and necessary costs, such as the costs of researching, engineering, programming, or assembling or gathering information, incurred in restoring or recreating the "electronic data" lost.

   b.  if not repaired or replaced within two (2) years from the date of loss, the cost of such "media" blank.

   Item 5.a.(2). above and item e.(2) under PERIOD OF LIABILITY are subject to a combined Program Sublimit(s) which is specified below:

   Program Sublimit(s):  **As specified for ELECTRONIC MEDIA VALUATION in the DECLARATIONS.** per "occurrence"

All other terms and conditions remain unchanged.



**Allianz ⑪**
Global Risks

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Endorsement No.** |
| **Effective Date:** | **December 08, 2011** | **3** |

## POLICY DEDUCTIBLE ENDORSEMENT

This "policy" is amended as follows:

A.      Item 1. under Policy Deductible of DECLARATIONS is amended as follows:

      from:      All deductibles apply on a per "occurrence" basis.

      to:      All deductibles apply on a per "occurrence" basis.  Deductibles specified for PROPERTY DAMAGE and TIME ELEMENT will apply separately to each such coverage even if both are involved in a single "occurrence".

B.      Item 3. under Policy Deductible of DECLARATIONS is amended as follows:

      from:      If two or more deductibles provided in this "policy" apply to a single "occurrence", then the total to be deducted will not exceed the largest deductible applicable.

      to:      If two or more deductibles provided in this "policy" apply to a single "occurrence", then the total to be deducted will be the largest deductible applicable.

All other terms and conditions remain unchanged.



**Policy Number:** CLP 3012948
**Effective Date:** December 08, 2011

**Endorsement Number**
**4**

# SCHEDULE OF ENTITIES

This endorsement modifies insurance provided under the following:

### ALLIANZ AMERICA PREFERRED PROPERTY FORM GLOBAL VERSION

Nomura Holding America Inc.

Nomura Securities International, Inc.

Nomura International Trust Company

Asset Securitization Corporation (Formerly Nomura Commercial Mortgage Corporation)

Nomura America Foundation

Nomura Asset Capital Corporation

Nomura Asset Management U.S.A. Inc. ["NAM-USA"] (100% owned by Nomura Asset Management Co., Ltd., which is in turn owned by Nomura Holdings, Inc.)

Nomura Asset Acceptance Corporation (Formerly known as Capco America Securitization Corporation & prior to that Nomura Asset Securities Corporation)

Nomura Automation Management Inc.

Nomura Corporate Research and Asset Management Inc.

Nomura Research Institute America, Inc. ["NRIA"] (100% owned by Nomura Research Institute, which is in turn owned by Nomura Holdings, Inc.)

Nomura Securities (Bermuda) Ltd.  (Bermuda)

Nomura Credit & Capital, Inc.

Nomura Securities Representacao S/C Ltda. (Brazil)

The Capital Company of America LLC

Nomura Derivative Products Inc.

Nomura Funds Research and Technologies America, Inc.

Long Drive Management Trust

Nomura Special Situation Investment Trust

Nomura Canada Inc. (Canada)

Nomura Home Equity Loan, Inc.

**AGR-IL M001 (11-03)**



Subordinate Asset Trust

Partnership Acquisition Trust (Series of Trusts)

Property Acquisition Trust (Series of Trusts)

Exempt Asset Trust (Series of Trusts)

Battery Park GP, LLC

Battery Park GP II, LLC

Battery Park GP III, LLC

Battery Park High Yield Opp Fund, LP

Battery Park Distr Opp Fund, LP

Nomura America Mortgage Finance, LLC

Nomura America Services, LLC

Northern Recovery Optimization Co., LLC

Nomura America Finance, LLC

NMF Investments, LLC

NCCMI Inc. (100% owned by Nomura Holdings, Inc.)

Liberty Capital Investments, LLC (100% owned by Nomura Holdings, Inc.)

Liberty Capital Investments II, LLC (100% owned by Nomura Holdings, Inc.)

Nomura Financial Holding America, LLC (100% owned by Nomura Holdings, Inc.)

Nomura Global Financial Products Inc.  (100% owned by Nomura Financial Holding America, LLC.)

Nomura Holding North America, Inc.  (100% owned by Nomura Holdings, Inc.)

Nomura Securities North America, LLC (100% owned by Nomura Holding North America, Inc.)

Nomura Corporate Funding Americas, LLC (100% owned by Nomura Holding North America, Inc.)

Nomura Investment Company (Bermuda) Ltd.  (Bermuda)

Nomura Reinsurance Intermediary Inc.

Any other subsidiary corporations, partnerships, trusts, or limited liability companies, which is more than 50% owned by one or more of the above Named Insureds, now existing or hereafter created or acquired, subject to the Consolidation Merger, General Agreement B.

And any employee benefit plans sponsored by any Insured now existing or hereafter created or acquired.



Instinet Incorporated (As per the document on file with this insurer)

Instinet Incorporated (US)

Instinet Holdings Incorporated (US)

Instinet Group, LLC (US)

Instinet International Corporation (US)

Instinet, LLC (US)

Instinet Global Properties Inc, (US) (formerly Chi-X Global Inc.)

Chi-X Australia Pty Ltd (Australia)

Chi-X Singapore Pte. Limited (Singapore)

Chi-X Canada ATS Limited (Canada)

Instinet Global Technology, LLC (US) (formerly Chi-X Global Technology, LLC)

Chi-X Global Technology (HK) Limited  (HK)

Chi-East Pte. Ltd. (Singapore)

Instinet Japan Services KK (Japan)

Instinet Australia Pty Limited (Australia)

Instinet Australia Clearing Nominees Pty Ltd (Australia)

Instinet Singapore Services Private Limited (Singapore)

Instinet International Holdings Inc. (US)

Instinet IC, LLC (US)

Instinet IH, LLC (US)

Instinet Realty Services Inc. (US)

Instinet LP (UK)

Instinet LP Nominees Ltd. (UK)

Instinet International Limited (UK)

Instinet Global Services Limited (UK)

Instinet Canada Limited (Canada)

Instinet Europe Limited (UK)

Instinet Japan Limited (UK)

Instinet Pacific Services Limited (HK)



Instinet Pacific Limited (HK)

Instinet Alpha Trading Limited (HK)

Meet the Street LLC (US)

Chi-X Asia-Pacific Services Limited (HK)

Instinet Canada Cross Limited  (Canada)

Chi-X Japan Limited  (Japan)

Chi-X Japan Services Limited (Japan)

Instinet Global Technology Properties, LLC (US) (formerly Market Prizm, LLC)

Chi-X Global Holdings LLC (US)

Chi-X Americas LLC (US)

Chi-FX LLC (US)

And/or any Instinet Incorporated's subsidiaries and affiliated partnerships, corporations, legally recognized entities, trusts, and companies, now existing or hereinafter constituted, majority owned or controlled, directly or indirectly, in any combination, by Instinet Incorporated and/or by one or more of its subsidiaries.

And any employee benefit plans sponsored by any Insured now existing or hereinafter created or acquired.

All other terms and conditions remain unchanged.



**Allianz**
Global Risks

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Endorsement No.** |
| **Effective Date:** | **December 08, 2011** | **5** |

## SERVICE INTERRUPTION - AUDIO, DATA AND VIDEO COVERAGE ENDORSEMENT

This "policy" is amended as follows:

A.    Item 2.e. under EXCLUSIONS is deleted in its entirety and replaced with the following:

e.    lack of the following services:

(1)  incoming electricity, fuel, gas, refrigerant, steam, water;

(2)  outgoing sewerage; or

(3)  incoming or outgoing audio, data, video;

all when caused by loss or damage to any property outside Insured Location(s), except as otherwise provided under SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT.

B.    SERVICE INTERRUPTION PROPERTY DAMAGE under PROPERTY DAMAGE COVERAGE EXTENSIONS is deleted in its entirety and replaced with the following:

**SERVICE INTERRUPTION PROPERTY DAMAGE**

a.   This "policy" is extended to cover direct physical loss or damage to Insured Property at Insured Location(s) when such physical loss or damage results from the interruption:

(1)  of incoming services consisting of:

(a)  electricity;

(b)  fuel;

(c)  gas;

(d)  refrigerant;

(e)  steam;

(f)  water;

(2)  of outgoing sewerage service; or

(3)  of incoming or outgoing audio, data and video;

that is caused by physical loss or damage not otherwise excluded by this "policy" to any property, including property (except satellites) excluded under EXCLUDED PROPERTY, of the supplier of such services situated:

(i)   within the Distance Limitation specified for this extension from such Insured Location(s); or

(ii)  within the Policy Territory, if no Distance Limitation is specified.

The Insured will immediately notify the suppliers of services of any interruption of such services.


**Allianz** ⑪
**Global Risks**

Policy No. CLP 3012948  Endorsement No. 5
SERVICE INTERRUPTION - AUDIO, DATA AND VIDEO COVERAGE
ENDORSEMENT

    b.  No coverage is provided under this extension:

       (1)  unless the "period of service interruption property damage" exceeds the Waiting Period specified for this extension;

       (2)  if the interruption of such services is caused directly or indirectly by:

          (a)  loss or damage to satellites; or

          (b)  the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such services.

    c.  Any Program Sublimit(s) specified for SERVICE INTERRUPTION - AUDIO, DATA AND VIDEO applies in the aggregate to a.(3) above only.  Such Program Sublimit(s) is part of and not in addition to the Program Sublimit(s) specified for SERVICE INTERRUPTION PROPERTY DAMAGE.

    d.  The following definition applies wherever the defined term appears in quotation marks:

       (1)  The term "period of service interruption property damage" means the period of time:

          (a)  starting at the time when an interruption of specified services occurs; and

          (b)  ending when, with due diligence and dispatch, such services could be wholly restored.

C.    SERVICE INTERRUPTION TIME ELEMENT under TIME ELEMENT COVERAGE EXTENSIONS is deleted in its entirety and replaced with the following:

    **SERVICE INTERRUPTION TIME ELEMENT**

    a.  This "policy" is extended to cover the actual loss sustained and the EXTRA EXPENSE incurred by the Insured at Insured Location(s) during the "period of service interruption time element" when such loss results from the interruption:

       (1)  of incoming services consisting of:

          (a)  electricity;

          (b)  fuel;

          (c)  gas;

          (d)  refrigerant;

          (e)  steam; and

          (f)  water;

       (2)  of outgoing sewerage service; or

       (3)  of incoming or outgoing audio, data and video;

       that is caused by physical loss or damage not otherwise excluded by this "policy" to any property, including property (except satellites) excluded under EXCLUDED PROPERTY, of the supplier of such services situated:

          (i)  within the Distance Limitation specified for this extension from such Insured Location(s); or

          (ii)  within the Policy Territory, if no Distance Limitation is specified.

       The Insured will immediately notify the suppliers of services of any interruption of such services.


**Allianz** ⑪
**Global Risks**

**Policy No. CLP 3012948  Endorsement No. 5**
**SERVICE INTERRUPTION - AUDIO, DATA AND VIDEO COVERAGE**
**ENDORSEMENT**

    b.  No coverage is provided under this extension:

      (1)  unless the "period of service interruption time element" exceeds the Waiting Period specified for this extension; or

      (2)  if the interruption of such services is caused directly or indirectly by:

        (a)  loss or damage to satellites; or

        (b)  the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such services.

    c.  Any Program Sublimit(s) specified for SERVICE INTERRUPTION - AUDIO, DATA AND VIDEO applies in the aggregate to a.(3) above only.  Such Program Sublimit(s) is part of and not in addition to the Program Sublimit(s) specified for SERVICE INTERRUPTION TIME ELEMENT.

    d.  The following definition applies wherever the defined term appears in quotation marks:

      (1)  The term "period of service interruption time element" means the period of time:

        (a)  starting at the time when an interruption of specified services occurs;

        (b)  ending when:

          (i)  with due diligence and dispatch such services could be wholly restored; and

          (ii)  the Insured Location(s) receiving such services could or would have resumed normal operations following the restoration of such services under the same or equivalent physical and operating conditions as provided by PERIOD OF LIABILITY; and

        (c)  limited to only those hours during which the Insured would or could have used such services if it had been available.

      The "period of service interruption time element" does not extend to include the interruption of the Insured's business caused by any reason other than the interruption of the specified services.

All other terms and conditions remain unchanged.



**Allianz ⑪**
Global Risks

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Endorsement No.** |
| **Effective Date:** | **December 08, 2011** | **6** |

## TERRORISM ENDORSEMENT: CERTIFIED ACT OF TERRORISM

**A.   Coverage**

This "policy" covers direct physical loss or damage caused directly or indirectly by or resulting from a "certified act of terrorism".

**B.   Company's Limit Of Liability**

Irrespective of the number of "locations" involved, the Company is not liable under this endorsement for more than its proportionate share, as specified below, of the Program Sublimit(s) which is part of the Program Limit or is part of any Program Layer Limits that make up the Program Limit for all loss or damage caused directly or indirectly by or resulting from a "certified act of terrorism" during any one "occurrence", including any loss or damage (by fire or otherwise) which ensues from a "certified act of terrorism".

| Company's Limit Of Liability | | Program Sublimit(s) | | |
|---|---|---|---|---|
| $ 325,000,000 | (being 100%) part of | $ 325,000,000 per "occurrence" | excess of | Policy Deductible |

**C.   Disclosure**

The following disclosure is added to the "policy":

COVERAGE IS PROVIDED BY THIS ENDORSEMENT FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, THIS POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT  COVERAGE UNDER THIS POLICY, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE UNDER THIS POLICY MAY BE REDUCED.

**D.   Application Of Other Exclusions**

All other limitations and exclusions as provided elsewhere in this "policy" are in full force and effect.



**Allianz** **Global Risks**

**Policy No. CLP 3012948 | Endorsement No. 6**
**TERRORISM ENDORSEMENT: CERTIFIED ACT OF TERRORISM**

E.    **Definitions**

For the purpose of this endorsement, the following definitions apply wherever the defined terms appear in quotation marks:

1.    **"The Act"**

The term "the act" means the federal Terrorism Risk Insurance Act of 2002 as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

2.    **"Certified Act of Terrorism"**

The term "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to "the act". The criteria contained in "the act" for a "certified act of terrorism" include the following:

a.    The act resulted in aggregate property and casualty insurance losses in excess of $5,000,000; and

b.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3.    **"Occurrence"**

The term "occurrence" when applied to a "certified act of terrorism" means any one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one "occurrence". It will be defined as the sum total of all losses arising out of or caused by a "certified act of terrorism" during any period of seventy-two (72) consecutive hours.

When filing a proof of loss, the Insured will have the right to elect the moment at which such seventy-two (72) hour period is deemed to have commenced provided always that no elected period of seventy-two (72) hours will commence earlier than when the first loss to insured property or interests occurs.

However, the Company will not be liable hereunder for any loss or damage:

a.    occurring before this "policy" becomes effective; or

b.    arising from an "occurrence" which is in progress at the time this "policy" becomes effective, even if such loss or damage occurs after this policy becomes effective; or

c.    occurring after the expiration of this "policy", except loss or damage arising from an "occurrence" in progress at the time this "policy" expires.

F.    **Premium**

Coverage is provided by this endorsement in consideration of the premium specified below:

Premium:    $230,000

All other terms and conditions remain unchanged.



**Allianz**
**Global Risks**

| | | |
|---|---|---|
| **Policy No.:** | **CLP 3012948** | **Endorsement No.** |
| **Effective Date:** | **December 08, 2011** | **7** |

## TRANSPORTATION TIME ELEMENT COVERAGE ENDORSEMENT

This "policy" is amended as follows:

A.   This "policy" covers TIME ELEMENT loss resulting from physical loss or damage covered under TRANSPORTATION.

B.   The exclusion under TIME ELEMENT EXCLUSIONS that reads as follows is deleted in its entirety:

Any TIME ELEMENT loss resulting from physical loss or damage covered under TRANSPORTATION.

C.   The Program Sublimit(s) specified for TRANSPORTATION applies to all coverages, including TIME ELEMENT, provided under TRANSPORTATION.

All other terms and conditions remain unchanged.